Carlisle W. BRISCOE, Appellant,

v.

STATE of Indiana, Appellee.

No. 1–1077A238.

Court of Appeals of Indiana,
First District.

May 2, 1979.

Rehearing Denied June 12, 1979.

Harriette Bailey Conn, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Rollin E. Thompson, Asst. Atty. Gen., Indianapolis, for appellee.

LYBROOK, Presiding Judge.

After a trial to a jury, defendant-appellant Carlisle Briscoe was found guilty of the offenses of first-degree burglary, conspiracy to commit first-degree burglary and assault. He appeals, raising five issues for our review:

1) Whether the trial court erred in allowing the State to amend the information to add two additional crimes as Counts III and IV after Briscoe had entered pleas of not guilty to the original two crimes charged under Counts I and II;

2) Whether the special judge had the power to assume jurisdiction over the crimes alleged in Counts III and IV;

3) Whether the trial court erred in denying Briscoe's request for a change of judge on Counts III and IV;

4) Whether the evidence is sufficient as a matter of law to sustain the convictions; and

5) Whether the trial court erred in entering judgments and imposing sentences on both Counts II and IV.

We reverse the three convictions and discuss the first, third and fourth issues.

### Assault and First-Degree Burglary: Request for Special Judge

On October 5, 1976, an information in two counts was filed against Briscoe in Monroe Superior Court, No. 1, charging him with conspiracy to commit assault and battery with intent to kill and conspiracy to commit first-degree burglary, both under Ind.Code 35–1–111–1, since repealed. On October 8, Briscoe entered a plea of not guilty to each count.

On October 27, the court granted a motion for change of venue from the judge which had been filed by Briscoe's codefendant whose trial was later severed from Briscoe's. On November 15, Special Judge Charles R. Ratts assumed jurisdiction of the cause.

On February 9, 1977, the State moved to join two informations, which were pending in Monroe Superior Court under two separate cause numbers and which charged related crimes, with the information in this cause. The court overruled the State's motion because of a lack of jurisdiction by the Special Judge over the other causes. On February 18, the State moved to amend the information in this cause by adding Counts III and IV which charged the crimes originally charged by the informations filed in the other two pending causes. On February 22, Briscoe filed a motion in opposition to the proposed amendment, but the court sustained the State's motion to amend on March 2, over Briscoe's objection.

On March 3, the State filed its new Counts III and IV in this cause, charging Briscoe, respectively, with attempted commission of a felony while armed under Ind. Code 35–12–1–1, since repealed, and first-degree burglary under Ind.Code 35–13–4–4, since repealed.

On March 9, Briscoe was arraigned, over his objection, on Counts III and IV and he entered pleas of not guilty to both charges. On March 15, Briscoe filed a motion for change of venue from the judge on Counts III and IV, which motion was overruled on March 16.

On March 21, the jury was selected and sworn. Having been represented by the Monroe County Public Defender during the pretrial period, Briscoe chose to go to trial pro se. On March 24, evidence was concluded and the jury retired to deliberate. On March 25, the jury returned its verdict, convicting Briscoe of Counts II and IV and a lesser-included offense of Count III.

The State contends that the trial court did not err in denying Briscoe's request for a change of judge on Counts III and IV because: 1) the granting of the request is discretionary with the trial court; and 2) Briscoe failed to allege the necessary basis for his request. Both these contentions are contrary to the law.

The State's argument that the trial court has discretion in the granting or denying of a change of judge is based on its erroneous interpretation of the following emphasized portions of Ind.Rules of Procedure, Criminal Rule 12:

"In all cases where the venue of a criminal action may now be changed from the judge, such change shall be granted upon the execution and filing of an unverified application therefor by the state of Indiana or by the defendant. Upon the filing of a properly verified application, a change of venue from the county shall be granted in all cases punishable by death and *may be granted* in all other cases *when in the court's discretion cause for such change is shown to exist after such hearing or upon such other proof as the court may require.* Provided, however, that the state of Indiana or the defendant shall be entitled to only one [1] change from the judge and the defendant shall be entitled to only one [1] change from the county.

In any criminal action, no change of judge or change of venue from the county shall be granted except within the time herein provided.

An application for a change of judge or change of venue from the county shall be filed within ten [10] days after a plea of not guilty, or if a date less than ten [10] days from the date of said plea, the case is set for trial, the application shall be filed within five [5] days after setting the case for trial. Provided, that where a cause is remanded for a new trial by the Supreme Court, such application must be filed not later than ten [10] days after the party has knowledge that the cause is ready to be set for trial. . . ." (Emphasis added.)

A perusal of the first paragraph of C.R. 12 clearly reveals that the language relied upon by the State applies only to requests for change of venue from the county. The first sentence is the relevant language when a request is for a change of venue from the judge, and this language requires us to look elsewhere to determine what are the "cases where the venue of a criminal action may now be changed from the judge . . . . ."

■ Elsewhere, of course, must be to the statutes:

Ind.Code 35–2–1–1 provides:

"On a prosecution by indictment or information the state or a defendant may apply for a change of judge on the ground that a fair and impartial trial cannot be had by reason of the interest, bias or prejudice of the trial judge."

Ind.Code 35–2–1–5 provides:

"When application is made to a judge for a change of judge, he *shall* proceed no further in the cause, but a judge who is competent to act *shall* be substituted for him." (Emphasis added.)

The clear import of this statutory language is that a change of judge may be had by the defendant in every criminal action and that the request for a change of judge must be granted once application is properly and timely made. *Spugnardi v. State*, (1976) Ind.App., 356 N.E.2d 1199.

■ The State's second argument is that Briscoe did not make a proper application because he failed to allege any cause for a change of judge in his motion. This argument was disposed of in *State ex rel. Benjamin v. Crim. Ct. of Marion Cty.*, (1976) 264 Ind. 191, 341 N.E.2d 495, which held that C.R. 12 supercedes prior contrary statutes, and that it is no longer necessary for the defendant to state under oath that there is bias and prejudice against him. Under the rule, defendant need only file, within ten days after a plea of not guilty, an unverified motion for a change of judge as a matter of law without reciting any bias or prejudice on the part of the trial judge. This is precisely what Briscoe did.

■ The trial court erroneously denied Briscoe's request for a change of judge on the charges of attempted commission of a felony while armed and first-degree burglary; therefore, we reverse his conviction for assault as a lesser-included offense of attempted commission of a felony while armed and his conviction for first-degree burglary.

Although the State makes no such express argument, implicit in the trial court's denial of Briscoe's request for a change of judge on Counts III and IV and in the State's support of this denial is the notion that Briscoe had already received a change of judge on Counts I and II and, therefore, was not entitled to a further change of judge when Counts III and IV were added by amendment to the original information in this cause of action. Although we need not address this proposition in relation to the assault and first-degree burglary convictions which are reversible on the denial of a change of judge alone, we believe a few words are called for by what appears to be an attempted end run around C.R. 12.

The right to amend an information is conferred by statute. *See Drury v. State*, (1945) 223 Ind. 140, 59 N.E.2d 116. Permissible amendments are set out in Ind.Code 35–3.1–1–5 as follows:

"(a) An indictment or information which charges the commission of a crime

shall not be dismissed but may be amended on motion by the prosecutor at any time because of any immaterial defect, including:

(1) any miswriting, misspelling or grammatical error;

(2) any misjoinder of parties defendant or crimes charged;

(3) the presence or absence of any unnecessary or repugnant allegation;

(4) the failure to negative any exception, excuse, or proviso contained in the statute defining the crime;

(5) the use of alternative or disjunctive allegations as to the acts, means, intents, or results charged;

(6) any mistake in the name of the court or county in the title of the action, or the statutory provision alleged to have been violated;

(7) the failure to state the time or place at which the crime was committed where time or place is not of the essence of the crime;

(8) the failure to state an amount of value or price of any matter where such value or price is not of the essence of the crime;

(9) any other defect which does not prejudice the substantial rights of the defendant.

(b) The indictment or information may be amended in matters of substance or form by the prosecutor upon giving notice to the defendant and with the consent of the court, at any time before arraignment. When the information or indictment is amended, it shall be signed by the prosecuting attorney.

(c) Upon motion of the prosecutor the court may at any time before, during, or after the trial permit an amendment to the indictment or information in respect to any defect, imperfection or omission in form which does not prejudice the substantial rights of the defendant.

(d) Before amendment of any indictment or information other than amendment as provided in subsection (b) of this section, the court shall give all parties adequate notice of the intended amendment and an opportunity to be heard. Upon permitting such amendment, the court shall, upon motion by the defendant, order any adjournment or postponement of the proceedings which may, by reason of such amendment, be necessary to accord the defendant adequate opportunity to prepare his defense.

(e) Notwithstanding any other provision in this section, an indictment or information shall not be amended in any respect which changes the theory or theories of the prosecution as originally stated, or changes the identity of the crime charged; nor may an indictment or information be amended after arraignment for the purpose of curing a failure to charge or state a crime or legal insufficiency of the factual allegations."

We must look to the language of this statute to see if the amendment to the information in the case at bar is one which has been permitted by the legislature.

Accepting the trial court's and the State's characterization of the information charging Counts I and II as the original information that was amended, and their characterization of the addition of Counts III and IV as an amendment to the original information, the amendment is clearly not one to correct one of the immaterial defects listed by Subsection (a)(1) through (8). It cannot be the type of amendment allowed by Subsection (a)(9) because it clearly prejudiced the substantial rights of the defendant by precluding his automatic right to a change of judge under C.R. 12 on the substantive charges contained in the two counts which were added.

Subsection (b) does not apply because the amendment came after, not before, Briscoe's arraignment under the original information. Subsection (c) does not apply because, as we said above, Briscoe was clearly prejudiced by the amendment. Subsection (d) is a procedural provision not relevant to the issue at hand.

■ Subsection (e) expressly prohibits any amendment which changes the theory or theories of the prosecution as originally

stated or changes the identity of the offense charged. The original information charged Briscoe with two counts of conspiracy, while the amendment charged him with attempting to complete one of the acts and completing the other act he was alleged to have conspired to commit. It cannot be argued that the amendment did not add a new theory by charging an attempt to commit a crime and a consummated crime, or that it did not change the identity of the offense charged by adding two additional offenses not originally charged.

The legislature clearly did not intend for such an amendment to be made, perhaps for the very reason that this practice could lead to the circumvention of C.R. 12 as in the case at bar.

*First-Degree Burglary and Conspiracy to Commit First-Degree Burglary: Sufficiency of the Evidence*

Although we held above that Briscoe's conviction for first-degree burglary must be reversed because of the erroneous denial of his right to a change of judge, we also note that the conviction is reversible, as is the conviction for conspiracy to commit first-degree burglary, because of the insufficiency of the evidence. We arrive at this conclusion after a careful study of the briefs filed by the parties with this court, together with the entire transcript of the evidence presented at trial.

As we examined the record, we kept in mind the proper guidelines for appellate review when a criminal appellant alleges that his conviction by a jury of his peers is contrary to law because it is not supported by sufficient evidence. We can neither weigh the evidence nor determine the credibility of the witnesses. We must consider only that evidence most favorable to the State and all reasonable inferences therefrom. If there is substantial evidence of probative value from which a jury could reasonably have inferred that appellant was guilty beyond a reasonable doubt, we must sustain the conviction. *Mack v. State*, (1978) Ind.App., 380 N.E.2d 592; *Barnes v. State*, (1978) Ind., 378 N.E.2d 839.

The evidence shows that the defendant and Phillip Hartman were the objects of intense police surveillance during the ten-day period immediately preceding the burglary with which Briscoe was charged. During this period, various law enforcement officers observed evidence of frequent meetings between the two, sometimes in a particular Monroe County cornfield near a major highway and sometimes at Hartman's home. Sometime on or near September 25, 1976, one of Fred McFarland's half-sisters received a telephone call, the general tenor of which was threatening to McFarland. She identified the voice at trial as Briscoe's.

At 8:30 p. m. on September 27, McFarland left his house trailer to go to work. His dog was in the trailer. At 2:36 a. m., the police received a phone call from one of McFarland's half-sisters reporting that McFarland's trailer had been broken into. Police arrived at the trailer at 2:50 a. m. and found part of the window in the door had been broken out, the door was ajar, the dog was gone, and the trailer was in disarray.

The police testified that they believed they had Briscoe under surveillance at all times during the period of time during which the break-in occurred (from 8:30 p. m. to 2:30 a. m.), except from about 12:05 a. m. to 1:00 a. m. Briscoe was observed working at a service station at 7:00 p. m., walking from the service station to Hartman's truck in an adjacent tavern parking lot at approximately 8:45 p. m., and sitting in Hartman's truck conversing and drinking beer with Hartman from then until 11:55 p. m. A police officer testified that he overheard bits of the conversation referring to explosives, a machine gun, and a telephone conversation with a girl.

At 11:55 p. m., Hartman left the tavern parking lot in his truck and was followed to the cornfield by police. Briscoe returned to the service station and got into his own truck. Because he drove off in the direction of his home, he was not followed by the police. Police testimony placed Hart-

man in the cornfield from the time he arrived there around midnight until he left about 1:45 or 2:00 a. m., although one of McFarland's half-sisters identified Hartman's voice as the voice of the person who called her about 1:00 a. m. saying McFarland's dog had been taken and demanding a ransom.

A car entered the cornfield around 1:00 a. m. When Hartman's truck left the cornfield, a car also left the cornfield. Police followed the car and obtained the license number which was later found to be assigned to a car registered to Briscoe's mother. No one identified Briscoe as the driver. The police testified that there was sufficient time for Briscoe to have driven from his home to McFarland's trailer to the cornfield between 12:05 a. m. and 1:00 a. m.

Police found a partial, latent fingerprint on the glass which remained in the door to McFarland's trailer and this fingerprint was admitted into evidence along with a print police took from Briscoe's right thumb.

Under Ind.Code 35–13–4–4 and the information filed against Briscoe, the State had the burden of proving that Briscoe (1) broke and entered (2) into McFarland's house trailer (3) with the intent to steal his dog. *Majors v. State*, (1974) 160 Ind.App. 124, 310 N.E.2d 283.

The defendant acknowledges that the State's evidence showed that the break-in *could have* occurred between 12:05 a. m. and 1:00 a. m. when both parties agree Briscoe was not under police surveillance. We agree with the defendant's contention that this proves only that Briscoe had the same opportunity to have committed the break-in as all other persons who were not under police surveillance for a sufficient length of time between 8:30 a. m. and 2:30 p. m. Whether or not the State successfully narrowed this group and singled out the defendant beyond a reasonable doubt is the crux of the sufficiency of the evidence issue before this court. The only evidence presented by the State relative to this question was that of the telephone call on or near September 25, and the fingerprints and the testimony in relation thereto.

The jury heard a tape recording of the telephone call received by one of McFarland's half-sisters who identified Briscoe's voice in court as the voice of the caller. The caller referred to McFarland as "that young buck with the bulldog", asked where McFarland was, and said, "If he's in the county, he better keep moving."

The latent fingerprint taken by police at McFarland's trailer and the print of Briscoe's right thumb were introduced into evidence by a local law enforcement officer who testified that the two prints had been sent to the laboratories of the Federal Bureau of Investigation and the Indiana State Police, and that neither would make a comparison. The FBI said there was no latent print "of value . . . present in the lift". The State Police require 11 points of similarity between any two prints before making a comparison and they found only three. A comparison was made, however, by the testifying officer who said on the stand:

"What I'm testifying is that these [three] characteristics in this section here that are visible in the latent print are identical to this section here of Carlisle Briscoe's right thumb print. . . . Well, the sum and essence of it would be that the probability, even though it does have only three points, the probability of that being anyone else in Bloomington there probably wouldn't be over fifty to one hundred people who may have that same characteristics."

Thus, the State showed that Briscoe was one of 50 to 100 persons in Bloomington who *could have* committed the break-in, that he knew of McFarland's dog, and that he had made a statement threatening McFarland in general terms.

Although we cannot weigh the evidence under our standard of appellate review, we are charged with making several assessments: whether the evidence in support of the verdict is (1) *substantial,* (2) of *probative* value, and (3) sufficient to support a reasonable inference that defendant was guilty *beyond a reasonable doubt.*

In *Baker v. State*, (1956) 236 Ind. 55, 138 N.E.2d 641, at 644, Judge Emmert wrote:

"In considering the standard by which we review the evidence where it is challenged as being insufficient to sustain a verdict or finding, this court has often said there must be substantial evidence of probative value before we can decide an accused has been proved guilty beyond a reasonable doubt. 'This last rule places the evidence before the court on appeal, not for the purpose of weighing it, or for the purpose of determining the facts when there is actual conflict, but for the purpose of deciding, as a question of law, whether or not there is substantive evidence in support of the required material facts essential to a conviction. It is not enough to sustain a conviction that the evidence, when given full faith and credit, may warrant a suspicion or amount to a scintilla.' *Sullivan v. State* [1927], 200 Ind. 43, 47, 161 N.E. 265; *Cleveland, etc., Ry. Co. v. Wynant* [1893], 134 Ind. 681, 686, 34 N.E. 569.

' * * * We use the word "substantial" as meaning more than "seeming or imaginary." ' *Sylvester v. State*, 1933, 205 Ind. 628, 631, 632, 187 N.E. 669, 670.

'There must be some substantial evidence of probative value from which a reasonable inference of the guilt of the defendant may be drawn.' *Todd v. State*, 1951, 230 Ind. 85, 90, 101 N.E.2d 922, 924, *supra*. 'This court cannot weigh evidence, but must determine whether there is substantial evidence of probative value from which a jury could reasonably have inferred that appellant was guilty of the crime.' *Stice v. State*, 1950, 228 Ind. 144, 149, 89 N.E.2d 915, 917. See also *Christen v. State*, 1950, 228 Ind. 30, 39, 40, 89 N.E.2d 445; *Mattingly v. State*, 1952, 230 Ind. 431, 438, 104 N.E.2d 721; *Hansen v. State*, 1952, 230 Ind. 635, 639, 106 N.E.2d 226; *Harrison v. State*, 1952, 231 Ind. 147, 168, 106 N.E.2d 912, 32 A.L.R.2d 875; *Bowens v. State*, 1952, 231 Ind. 559, 562, 563, 109 N.E.2d 91; *Shutt v. State*, 1954, 233 Ind. 169, 117 N.E.2d 892."

Justice Hunter, writing for the majority in *Liston v. State*, (1969) 252 Ind. 502, 250 N.E.2d 739, at 743, further explained our duty as an appellate court in a passage recently repeated, in part, by Justice Hunter in *Smith v. State*, (1979) Ind., 386 N.E.2d 1193, 1196:

"We recognize the rule that we may not weigh the evidence and may only review that evidence most favorable to the state to determine, on a sufficiency of the evidence question, whether we shall affirm or reverse the judgment of the trial court. Such appellate duty, of which we take cognizance, in far too many cases requires that we probe and sift the evidence. Thus, if as a result of our probing and sifting the evidence most favorable to the state, we determine that the residue of facts is so devoid of evidence of probative value and reasonable inferences adduceable therefrom, as to preclude guilt beyond a reasonable doubt, we should so declare. A failure to do so is a rejection of our duty as an appellate tribunal and tantamount to the enunciation of a rule that any evidence no matter how infinitesimal or inferences drawn therefrom, whether based on speculation or conjecture, would be sufficient to establish guilt beyond a reasonable doubt. This we are not inclined to do for to assume such a judicial posture, neglecting our appellate responsibility, would reduce the appellate process to an exercise in impotent and meaningless futility. See *Manlove v. State* (1968), 250 Ind. 70, 232 N.E.2d 874, 235 N.E.2d 62; *Baker v. State* (1956), 236 Ind. 55, 138 N.E.2d 641."

The State did prove that Briscoe had a nonexclusive opportunity to commit the crime but that it is not enough to support a conviction. *Myers v. State*, (1954) 233 Ind. 66, 116 N.E.2d 839. Beyond this, the State's evidence, at best, warrants only a suspicion and that also is not enough. *Baker, supra*. We agree with Justice Hunter that we cannot shirk our clear duty to reverse Briscoe's conviction for first-degree burglary because of the legal insufficiency of the evidence.

Under Ind.Code 35–1–111–1 and the information, the State's burden was to prove beyond a reasonable doubt that Briscoe (1) united and combined (2) with another person, Phillip Hartman, (3) for the purpose of committing the felony of first-degree burglary of McFarland's trailer. *Gray v. State*, (1974) 161 Ind.App. 70, 314 N.E.2d 798.

"The essentials necessary to constitute a conspiracy under the statute are well established in this State and they are reaffirmed in *Robertson v. State* (1952), 231 Ind. 368, 370, 108 N.E.2d 711, as follows:

' "In order to be a conspiracy there must be an intelligent and deliberate agreement to commit the offense charged. It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to do the acts and commit the offense, though the agreement is not manifest by any formal words. Concurrence of sentiment and co-operative conduct in the unlawful and criminal enterprise are the essential ingredients of criminal conspiracy. There must be an agreement and there must be evidence to prove the agreement directly, or such a state of facts that an agreement may be legally inferred. Conspiracies cannot be established by a mere suspicion. Evidence of mere relationship or association between the parties does not show a conspiracy." '

We recognize also that 'Participation in criminal conspiracy need not be proved by direct evidence but common purpose and plan may be inferred from development and collocation of circumstances.' *Taylor (Bryant) v. State* (1956), 235 Ind. 126, 131, 131 N.E.2d 297, 299. See also: *Mattingly v. State* (1957), 236 Ind. 632, 142 N.E.2d 607." *Mattingly v. State*, (1957) 237 Ind. 326 at 338, 145 N.E.2d 650 at 656.

Let us review the acts and conduct of Briscoe disclosed by the State's evidence. Briscoe frequently met with Hartman, sometimes in the cornfield and once, on September 27, the night of the break-in, in a tavern parking lot. A police officer eavesdropped on the conversation in the parking lot and heard: 1) Briscoe say,

"Boom!"; 2) Briscoe mention a machine gun and say, "Rat-a-tat-tat-tat!"; and 3) Briscoe "sort of infer . . . in his conversation some of these things that made me think that he, in fact, was the one that made the phone call," referring to the threatening call McFarland's half-sister testified that she had received from Briscoe on or near September 25. Briscoe headed for his home in his truck at 12:05 a. m. on the night of the break-in, and his mother's car was identified as leaving the cornfield around 2:00 a. m., after a car had been seen entering the cornfield at 1:00 a. m.

The acts and conduct of Hartman disclosed by the State's evidence, in addition to the above meetings and conversations with Briscoe, were: 1) on September 27, he drove from the tavern to the cornfield at midnight and his truck left the cornfield around 2:00 a. m.; and 2) during this period of time, at around 1:00 a. m., one of McFarland's half-sisters received a phone call she said was from Hartman. The jury heard a tape recording of the conversation during which the caller said, "We've got the bulldog. Do you want to pay the $300.00 ransom?"

The State argues that the meetings between the defendant and Hartman before the break-in, coupled with the content of the tavern parking lot conversation and the fact that Briscoe's mother's car was identified as leaving the cornfield along with Hartman's truck around 2:00 a. m. on the night of the break-in, are sufficient to show the existence of a conspiracy between the defendant and Hartman to commit the burglary.

The defendant argues that the State's case, at best, shows a mere association of Briscoe with Hartman which tends to establish a mere suspicion of guilt.

We agree with the defendant that there is no evidence to show any agreement between the defendant and Hartman to burglarize the trailer. Mere juxtaposition in time between the break-in and a meeting between the defendant and Hartman, especially when such meetings were shown to be

frequent occurrences, is insufficient to create an inference beyond a reasonable doubt that Briscoe was guilty of the conspiracy as charged. Hartman's reference to an unnamed cohort in the phone call to McFarland's half-sister is insufficient to inculpate Briscoe.

The State's evidence establishes a relationship or association between the defendant and Hartman that tends to create suspicion, but, to reiterate Judge Emmert's words in *Baker, supra,* at 644, "It is not enough to sustain a conviction that the evidence, when given full faith and credit, may warrant a suspicion." The evidence is legally insufficient to support a conviction for conspiracy to commit first-degree burglary.

It should be said in defense of the trial court that Briscoe, who acted as his own attorney throughout the trial, failed to file any motion for judgment on the evidence at the close of the State's case pointing out any insufficiency in the evidence.

Our Supreme Court stated in *Smith, supra*:

"The United States Supreme Court has recently held that the Double Jeopardy Clause precludes a second trial when the reviewing court has found the evidence insufficient to sustain the jury's verdict of guilty, and the only just remedy available is the entry of a judgment of acquittal. *Burks v. United States,* (1978) 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1; *Greene v. Massey,* (1978) 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15."

Therefore, the judgment on the charges of first-degree burglary and conspiracy to commit first-degree burglary must be vacated with instructions to the trial court to enter a judgment of acquittal (a finding of not guilty notwithstanding the verdict). The judgment on the charge of assault is reversed.

Judgment reversed.

LOWDERMILK and ROBERTSON, JJ., concur.