Ernest C. COLLIER, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8910–CR–785.

Supreme Court of Indiana.

Nov. 14, 1990.

William L. Soards, Soards & Fruechtenicht, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, for which he received a sentence of sixty (60) years, Criminal Recklessness, a Class D felony, for which he received a sentence of four (4) years, and Carrying a Handgun Without a License, a Class A misdemeanor, for which he received a sentence of one (1) year, all sentences to run consecutively.

The facts are: On September 12, 1988, the victim, Frederic J. McGuire, Jr., sustained a mortal gunshot wound outside his home in Indianapolis. He was taken to Community Hospital where he died September 15, 1988. A witness, Michael Johnson, testified he saw a brown two-door automobile stop in front of the McGuire residence shortly before the shooting and that a man got out of the car, walked to the residence, and talked to the victim. Johnson then heard a shot and saw the man who had been talking to the victim running to the car holding a pistol in his hand. The car left and went south on Catherwood with the witness in pursuit. He chased the vehicle, obtained the first number of the license plate but then lost track of the car. He returned to the scene of the shooting where he found Frederic McGuire, Jr., lying on the porch of his home bleeding from a wound in his forehead.

Subsequent investigation led police officers to the home of appellant where they talked with appellant's mother. She stated that he had told her he got into some trouble but did not elaborate. Police learned that she was the owner of a brown, two-door 1976 Pontiac Grand Prix and that its license number had the same first number as reported by Johnson.

At approximately 6:30 p.m. on the day of the shooting, police officers observed a brown Pontiac Grand Prix. They stopped the vehicle, which was driven by Monica Baker. Her passenger was appellant. Appellant was arrested but denied any involvement in the shooting.

James Merrill testified that he and appellant were riding around together in the brown Pontiac Grand Prix on the evening of the shooting. He said they obtained some beer and cognac and both became intoxicated. He stated that they drove to Church's Chicken located at 3850 East 38th Street, where appellant had a confrontation with his girlfriend, Carla George. (Other evidence shows that Carla George had lived with appellant for a period of time and that they were the parents of an infant daughter, Latanja George.) The two men then drove to the home of Carla George's family, located at 4053 North Webster. Her 19–year–old brother, John Hollins, Jr., was in the yard playing with Carla George's infant daughter.

Appellant got out of the car, pointed a gun at Hollins, and told him to put the baby down because he was going to kill him. At that moment, Hollins' father came to the front porch and told appellant he was not the only one with a gun, at which point appellant left in the automobile. The two men then changed positions with Merrill driving the car.

Appellant instructed him where to drive. They drove to the home of the victim at 4212 Catherwood where appellant exited the car and directed Merrill to drive up the street, turn the car around, and come back for him. While Merrill was turning the car around, he heard a shot. As he pulled up in front of the McGuire home, appellant "trotted" to the car with a gun in his hand

and stated, "That's the way I like to play." The two men then left the scene.

Other testimony was to the effect that the victim worked at the Church's Chicken where Carla George worked and that he knew John Hollins, Jr. However, there was no evidence that he had been involved in any disagreement between appellant and John Hollins, Jr.

Appellant claims there is insufficient evidence to support the verdict; therefore, the verdict is contrary to law. Appellant claims there is a lack of evidence that he committed the crime of murder. Appellant contends there is no eyewitness who saw him actually shoot the victim and no evidence that the shooting was knowingly and intentionally committed. He concedes the testimony of James Merrill but points out that Merrill had been convicted of a felony. He says that although Merrill testified he let appellant out of the car in front of the victim's house and heard a shot while he was turning the car around, he did not see appellant shoot anyone.

He contends the only other witness, Michael Johnson, who claimed to have seen the shooting, was quite a distance away and could not positively identify appellant as the person who fired the shot. Appellant points to the fact that chemical tests performed on him shortly after the shooting showed no evidence that he had recently fired a gun. Appellant also points out that his mother and sister testified that he was at their house during the time the crime was committed.

■ This Court will not weigh conflicting evidence. Such is the prerogative of the jury. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670. If there is substantial evidence of probative value to sustain a jury's verdict, the conviction should be upheld. *Allen v. State* (1986), Ind., 496 N.E.2d 53. Appellant claims the State's evidence merely placed him near the scene of the crime but did not connect him directly with it, citing *Briscoe v. State* (1979), 180 Ind.App. 450, 388 N.E.2d 638. Appellant also cites *Reynolds v. State* (1970), 254 Ind. 478, 260 N.E.2d 793 for the proposition that when the evidence is wholly circumstantial it must be so conclusive and compelling in character that it excludes every reasonable hypothesis of the assumption of innocence of the defendant.

■ In the case at bar, it is true that no one actually saw appellant fire the fatal shot. However, the testimony of Merrill placed appellant in the victim's front yard at the time the shot was fired and placed a gun in the hand of appellant. When appellant "trotted" back to the car and stated, "That's the way I like to play," there was sufficient evidence to support Merrill's supposition that appellant had shot someone. This evidence together with Johnson's description of the car to verify Merrill's testimony was sufficient evidence to support the jury's conclusion that it in fact was appellant who fired the fatal shot.

■ Appellant also points to the fact that no gun was recovered and the State failed to prove any motive or intent on his part. Due to the time elapsed between the shooting and the arrest of appellant, the jury was entitled to believe that appellant had disposed of the gun in some manner. As to the lack of a motive, it is not necessary that the State prove motive by direct evidence. The jury may infer a motive from the conduct of the defendant. *Byrd v. State* (1962), 243 Ind. 452, 185 N.E.2d 422. The same is true of appellant's contention regarding intent. *See Rogers v. State* (1978), 267 Ind. 654, 373 N.E.2d 125. The evidence in this case is ample to support the verdict of the jury.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.