Loren Wayne **TIDWELL**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 15S00–9207–CR–0535.

Supreme Court of Indiana.

Dec. 16, 1994.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, for appellant.

Pamela Carter, Atty. Gen., Suzann Weber Lupton, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, and of Conspiracy to Commit Murder, a class A felony, as well as a finding that he is a habitual offender. He was sentenced to forty (40) years on the murder count, enhanced by thirty (30) years for the habitual offender status, and to thirty (30) years on the conspiracy count, to be served consecutively for a total executed sentence of one hundred (100) years.

The facts are: On Saturday, August 3, 1991, appellant spent the evening with friends, bar-hopping, shooting pool, drinking, and indulging in a running altercation with Matt Lightfield, the victim in this case, over which man would get to spend the night with Sharon Reed, a young lady of the previous night's acquaintance. During the course of the night appellant was chauffered about by one Sharon Siefert, shuttling between the Flicker–Inn, Smitty's, and Sgt. Pepper's, all drinking establishments in the Lawrence-burg area, and the residences of several drinking companions, including Rhonda Cook and Jeff Hill, John "Weasel" Redding, and Donna Poynter, who tendered to Tidwell possession of "Junior," her small-frame .25–caliber Raven semiautomatic handgun.

At closing time at Sgt. Pepper's, appellant and Lightfield engaged in a scuffle outside the bar in order to determine who would get to escort Sharon Reed for the remainder of the evening. The appearance of a police car ended the fistfight, and Reed left with Light-field to spend the night at the apartment of Cook and Hill, but not before appellant promised Lightfield, "I'll kill you." Siefert then drove appellant to the home of Eddie Dunn, all the while listening to his grief over losing to Lightfield the companionship of Reed. Upon arriving at Dunn's mobile home, appellant, appearing overanxious and fidgety, recounted to him the events of that evening and enlisted his assistance (and the use of Siefert's car) in returning to Law-renceburg. As Dunn watched, appellant disassembled, cleaned and reassembled "Junior," and instructed Dunn to keep an eye on the other occupants of Cook and Hill's apartment while he dealt with Lightfield.

Upon arriving, they were able to enter because the door's lock was broken. Appellant crept past Cook and Hill, asleep on the couch, and into the bedroom where Reed and Lightfield were also sleeping. Appellant fired one round into Lightfield's head, muffling the report with a couch cushion held over the muzzle, and then bounded out of the bedroom and out of the apartment, assuring Dunn that had the gun not jammed, "the bitch would be dead, too." The duo returned to Dunn's home, where they placed the pistol in a potato chip bag and buried it in a ravine behind the mobile home.

Meanwhile, as their intoxication faded, the occupants of Hill and Cook's apartment were awakened by the moans of Matt Lightfield, who thought he was suffering a heart attack and asked Reed, who had awakened covered with his blood, to summon help. Before passing out, Reed roused Hill and Cook, who went next door and telephoned emergency personnel. They arrived to find Lightfield on the living room floor, bleeding profusely and explaining he had been beaten up. He was transported to the hospital, where examination revealed he had been shot in the head with a small caliber gun. Several days after being admitted, Lightfield died of complications (an embolism of the carotid artery) from his wound, whereupon Eddie Dunn came forward and told authorities all about the shooting.

Appellant advances two arguments to support his contention the evidence is insufficient to support his convictions. He first maintains his conspiracy conviction is erroneous because there was no evidence, direct or circumstantial, to prove that Eddie Dunn, his alleged co-conspirator, ever intelligently and deliberately agreed with him to shoot and kill Lightfield. He cites Ind.Code § 35–41–5–2 for the three elements of the crime of conspiracy: 1) the defendant intended to commit the felony; 2) the defendant agreed with another person to commit the felony; and 3) either the defendant or the other person performed an overt act in furtherance of the conspiracy. Appellant goes on to cite uncontradicted evidence that Dunn drove him to

Lawrenceburg only to get him out of his trailer, that he thought appellant was just "blowing smoke" about shooting Lightfield, and that he believed nothing more than a fistfight would transpire.

Appellant acknowledges that this Court has held that our present statute embodies the unilateral theory of conspiracy such that proof that the co-conspirator intended to carry out the conspiracy is not required. *Christopher v. State* (1988), Ind., 531 N.E.2d 480; *Garcia v. State* (1979), 271 Ind. 510, 394 N.E.2d 106. Nevertheless, he contends this case is controlled by our result in *Woods v. State* (1980), 274 Ind. 624, 413 N.E.2d 572, wherein this Court reversed the defendant's conviction for conspiracy to commit battery with a deadly weapon, finding there had existed an agreement only to engage in a brawl, and there had been no agreement concerning the use of weapons such as materialized during the poolroom melee.

As the State points out, however, *Woods* is not precisely apposite here, where appellant's intention not only to involve "Junior," but to use the gun to kill Lightfield, is evident from the beginning. Under the unilateral theory, Dunn's subjective belief as to appellant's intent to carry through on the murder plan is irrelevant to appellant's guilt. It is clear the plan itself, as charged, involved killing Lightfield with the pistol, and that appellant agreed to carry out that plan; thus we find no lack of evidence sufficient to prove the agreement element of the conspiracy to murder Lightfield.

■ Appellant also argues the evidence was insufficient to support his convictions due to the nature of the testimony supporting the State's case. In his own words, appellant insists: "Seldom has a case involved so much contradictory, conflicting, inherently incredible and self-serving testimony. The State's witnesses cannot agree among themselves on who was present when, who was drinking or drunk and who was not, who made love and who did not make love, whether Tidwell and Lightfield argued or whether they fought, whether the argument or fight was over keeping Sharon Reed's mouth shut or who was going to go to bed with her that night...." Appellant goes on to recite a plethora of apparent inconsistencies, both internal and external, regarding the State's testimony, and concludes this case is one in which the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it and thus should be reversed, citing *Lambert v. State* (1987), Ind., 516 N.E.2d 16.

As the State reminds us, our sufficiency review standard is that a conviction will be affirmed on appeal if, looking to the evidence and reasonable inferences therefrom which support the verdict, there is substantial evidence of probative value to support the conclusion reached by the trier of fact. *Jones v. State* (1992), Ind., 589 N.E.2d 241. We simply cannot usurp the prerogative of the jury and reweigh conflicting evidence. *Collier v. State* (1990), Ind., 562 N.E.2d 722. The discrepancies cited by appellant to support his argument, such as those quoted above, affect only the weight of the evidence and the credibility of the witnesses, which clearly are issues beyond the scope of appellate review. *Taylor v. State* (1985), Ind., 479 N.E.2d 1310.

■ Where there is evidence in the record to support the verdict of the jury, it is improper for us to supplant our opinion on the weight of the evidence for that of the jury. *Smith v. State* (1989), Ind., 547 N.E.2d 845. Moreover, a conviction may be sustained solely upon the uncorroborated testimony of a co-conspirator. *Hammers v. State* (1987), Ind., 502 N.E.2d 1339. In the case at bar, there is ample proof as set forth in the facts given above to support each element of the crimes of murder and conspiracy.

■ Appellant contends the trial court erred in refusing to give his Tendered Instruction No. 5. This instruction, taken from the Federal Judicial Center's *Pattern Criminal Jury Instructions* No. 32, would have told the jury to receive co-conspirator Eddie Dunn's testimony with caution due to his agreement with the State to testify in exchange for lenient treatment in his own case. Appellant notes the giving of such an accomplice instruction was allowed in Indiana until it was overruled in *Cherry v. State* (1972), 258 Ind. 298, 280 N.E.2d 818; *see also*

*Avance v. State* (1991), Ind., 567 N.E.2d 1149.

He notes in addition, and provides extensive citation, that Indiana is in the minority on this point both in view of the preponderance of federal circuits, *see United States v. Fuller* (1st Cir.1985), 768 F.2d 343, and our sister state jurisdictions as well, *see People v. Zapien* (1993), 4 Cal.4th 929, 17 Cal.Rptr.2d 122, 846 P.2d 704, particularly where the accomplice testimony is uncorroborated. Appellant urges this Court to re-examine this issue, pointing out that only the State can, in effect, induce favorable testimony by offering plea bargains, which become "powerful inducements for perjured testimony," and that a cautionary instruction would serve to lessen the possibility of an erroneous conviction from "purchased testimony."

We believe, however, that Indiana's approach, as shown in, *e.g., Fox v. State* (1986), Ind., 497 N.E.2d 221 and effectuated in this case by the trial court, serves to alleviate the danger of convictions resulting from "purchased testimony" without raising other problems caused by singling out the testimony of a particular witness, *id.* Here, as per *Fox* and our other cases, the jury was fully apprised of the terms of any plea bargain struck between Dunn and the State, and therefore had sufficient information to assess the credibility of his testimony without the editorial comment necessarily implied by a cautionary instruction. The trial court did not err in refusing appellant's Tendered Instruction No. 5.

Appellant contends the trial court erred in denying his pretrial motions requesting funds to hire an investigator and a psychiatrist. Citing *Scott v. State* (1992), Ind., 593 N.E.2d 198, he correctly states that the decision whether to provide funds for an indigent defendant to hire expert assistance is a matter within the sound discretion of the trial court; that a court is not required to fund any and all experts the defense believes might be helpful; that the defendant bears the burden of demonstrating the need for such expert services; and that the decision must be made on a case-by-case basis. *Id.* Appellant notes our opinion went on to say that the central inquiries are whether the services are necessary to provide an adequate defense and whether the defendant specifies precisely how he would benefit from the requested expert services. *Id.*

■ Regarding his request for an investigator, appellant maintains the factual complexity of this case required delving into the activities of the "Iron Horsemen" motorcycle gang and its members, including "Weasel" Redding, investigating the numerous discrepancies among the various witnesses' stories, and investigating "possible evidence and witnesses living in Ohio and Kentucky." He concludes that a thorough investigation of the witnesses and circumstances surrounding the case was necessary to answer the question of "whether Sharon Siefert and Eddie Dunn were telling the truth, which in the end, is the only substantial question in this case."

While we agree with appellant's final assertion above, we cannot agree that the trial court abused its discretion in denying funds for an investigator. Although the credibility of Siefert and Dunn clearly is a central evidentiary issue in the case, the case itself is not factually complex; the multiplicity of possible witnesses merely affords the potential for a smokescreen of credibility confusion. An expert need not be provided solely for the purpose of conducting a fishing expedition. *Id.; Castor v. State* (1992), Ind., 587 N.E.2d 1281.

■ Similarly, appellant notes there was considerable evidence that he ingested a large amount of drugs and alcohol on the night of the crime, alleges he had no memory of what occurred after a certain point on the night of the crime, maintains a psychiatric expert would be necessary to determine whether he could have suffered from a blackout at the time of the killings, and argues it was an abuse of discretion not to allow his attorneys "to use public funds to explore this aspect of the case." As we have stated previously in *Castor, supra* and in *Hough v. State* (1990), Ind., 560 N.E.2d 511, 516, "[f]urnishing of an expert is not required when the purpose of an examination appears to be exploratory only.... The purpose of the request for an expert here appears to

have been exploratory only and the court did not abuse its discretion in rejecting it." The trial court did not err in denying appellant's motions for funds to hire experts.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and SULLIVAN, JJ., concur.