**Ralph FOX III, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 484S130.

Supreme Court of Indiana.

Sept. 5, 1986.

Donald J. Tribbett, Frederick A. Sabatini, Hanna, Small, Sabatini, Becker & Tribbett, Logansport, for appellant.

Linley E. Pearson, Atty. Gen., Latrielle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Ralph Fox appeals his convictions for seven counts of robbery, class B felonies, Ind.Code § 35–42–5–1 (Burns 1979 Repl.), and one count of accessory to a battery, a class C felony, Ind.Code § 35–42–2–1 (Burns 1979 Repl.) and Ind.Code § 35–41–2–4 (Burns 1979 Repl.). The court imposed concurrent fifteen year sentences for six of the robbery counts, a consecutive fifteen year sentence for the seventh robbery conviction, and a concurrent six year sentence for the battery conviction.

In this direct appeal appellant raises six issues:

(1) Whether the trial court erred by permitting evidence of his prior criminal record;

(2) Whether the multiple choice verdict form was ambiguous and confusing to the jury;

(3) Whether an instruction improperly focused on the credibility of the two accomplices;

(4) Whether testimony about threats made against a State witness constituted hearsay;

(5) Whether the judge assumed an adversarial role in the proceedings, and

(6) Whether the evidence is sufficient to sustain the verdict finding Fox an accessory to battery.

The evidence at trial showed that on May 10, 1983, Fox, Ronald Robert Wingett, and Chris Allen Day robbed the owner and customers of Baker's Family Restaurant. Armed with guns, Fox and Wingett threatened the victims when taking their money, while co-defendant Day waited outside in the car. During the robbery, appellant referred to Wingett by his nickname, "Kid." Two customers, John Wilson and William Bricker, were previously acquainted with appellant and recognized his voice during the robbery. During the robbery, Wingett shot Wilson. While Wilson was lying on the floor, he yelled to one of the masked robbers, "I'll get you, Fox." During the robbery, appellant warned Bricker, "Don't be a hero, Bill." Wilson and Bricker identified appellant in court as one of the robbers.

Three of the robbery victims testified that either appellant or Wingett took their money while armed with a gun. The prosecutor and defense counsel stipulated the same for the four remaining robbery victims.

Wingett was granted immunity for any robberies committed in Cass County, partially because he had been shot in the back during another robbery and was now paralyzed. The terms of the immunity agreement were described to the jury. Wingett testified that he committed the robbery at Baker's Family Restaurant with appellant while co-defendant Day waited outside in the car. He also testified that the money was equally divided among the three after the robbery. Co-defendant Day, whose nickname is "Cad", testified at trial pursuant to a plea bargain agreement. He corroborated Wingett's testimony.

Both Wingett and Day testified that they, together with appellant, robbed the Hillcrest Service Station on April 19, 1983. According to the testimony of Wingett and Day, Fox entered the station by himself

while the other two waited outside in the car. The money was once again equally divided among the three.

## I. Prior Criminal Record

Appellant argues that the trial court erred by permitting Detective Robert Sabatini to testify about defendant's prior criminal record. Having learned through his investigation that one of the robbers referred to the other as "Kid" or "Cad" during the robbery, Sabatini sought to determine the proper name. He testified that he asked an officer who worked at the Indiana Reformatory at Pendleton to check its records to determine whether anyone had an alias of Kid or Cad. The officer supplied the names of Chris Day, Ralph Fox, and Ronald Wingett. The State then asked Sabatini what other information he learned during the course of his investigation. Sabatini responded that on May 12th he received a call from the defendant, who stated that he wanted " . . . to turn himself in, however, he wanted to turn himself into (sic) his parole officer." Appellant argues that Sabatini's answers to both these questions informed the jury of his prior criminal record and should have been excluded.

Evidence of prior offenses committed by a defendant may not be introduced either to establish guilt of the crime charged or to show the defendant's propensity to commit crime. *Malone v. State* (1982), Ind., 441 N.E.2d 1339. Such evidence lacks probative value and thus is neither relevant nor admissible. The rule precluding admissibility is:

> predicated upon our fundamental precept that every accused has the right to know the nature and cause of the accusation for which he is being prosecuted. To indiscriminately admit proof of criminal activity beyond that specifically charged may compel a defendant to meet accusations without notice and may effectively negate the due process presumption of innocence which our system of justice accords to every accused. Moreover, the admissibility of such evidence may raise collateral issues which confuse the jury

or divert its attention from the actual charges before it. *Malone*, 441 N.E.2d at 1345.

There are two primary exceptions whereby evidence of prior convictions or offenses may be introduced for purposes of impeachment or as substantive evidence. A defendant may be impeached with prior convictions of crimes of dishonesty or infamous crimes which traditionally rendered a witness incompetent. *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210. Prior offenses are admissible as substantive evidence when a common scheme or plan, intent, or motive is established between the prior offense and the charged crime. *Malone, supra.* Thus, if the evidence is relevant to a fact in issue (credibility) or probative on the question of motive, etc., it may be admissible.

In the case at bar, the logical inference to be drawn from the references to the penitentiary records and the parole officer is that Fox had a prior criminal record. Only a person who had been convicted of a criminal offense would have personal records at a prison or refer to a parole officer as his own. This evidence was not introduced for the purpose of impeachment or to establish a common scheme or plan, intent, purpose or motive. While the admission of this testimony was error, we believe it was harmless error. The additional evidence, in the aggregate, substantially and overwhelmingly supported the convictions. *Smith v. State* (1986), Ind., 490 N.E.2d 748. Two of the robbery victims knew Fox prior to the crime and recognized his voice when he spoke during the robbery. Both the Wingett and Day testified that appellant participated in the robberies with them and shared equally in the proceeds.

## II. Verdict Form

Appellant argues that the trial court erred by overruling his objection to the nature of the verdict form presented to the jury. He maintains that a multiple choice verdict form would have been ambiguous and confusing to the jury.

The format of the verdict form was: "We, the jury, find the Defendant Ralph Fox III: Not Guilty Guilty (circle one) as to Count I Robbery, Class B felony: (victim's name)." The verdict was presented in the same multiple choice format for each of the eight counts. The word "Guilty" had been circled for each count.

 An instruction which is apt to mislead or confuse the jury should not be given. *Carter v. State* (1977), 266 Ind. 196, 361 N.E.2d 1208. However, appellant merely presents a bare allegation of error and does not indicate how the jury was misled or confused by the verdict form. In an age full to overflowing with multiple choice questionnaires, the form of this verdict was not likely to be foreign to a jury of American adults. Moreover, the presentation of sixteen individual forms and the consequent shuffling of paper may have been more confusing to the jury than circling the correct choice on a single sheet of paper. We find no error.

### III. Instruction on Accomplice Credibility

 Appellant argues that the trial court erred by overruling his objection to the following instruction:

> You are instructed that an individual has the right against self-incrimination and that Chris Day and Ronald Wingett could not be compelled to testify in this trial if they would incriminate themselves unless they were granted immunity or entered into a negotiated plea agreement.

Appellant claims that the instruction was irrelevant to the issues before the jury.

A trial court's instructions must be relevant to the issues which the jury must decide in reaching a verdict. *Orr v. State* (1984), Ind.App., 472 N.E.2d 627. Relevancy in this context requires that jurors be instructed on "matters of law which are necessary for their information in giving their verdict." Ind.Code § 35–1–35–1 (Burns 1979 Repl.), recodified as Ind.Code § 35–37–2–2 (Burns 1984 Supp.). *Debose v. State* (1979), 270 Ind. 675, 389 N.E.2d 272. The purpose of an instruction is to inform

the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Foster v. State* (1974), 262 Ind. 567, 320 N.E.2d 745. We have previously held that this statute requires jury instructions on the law applicable to the case, rather than instructions which encompass all laws touching upon or related to the subject in controversy. *Malo v. State* (1977), 266 Ind. 157, 361 N.E.2d 1201.

 Failure to disclose to the jury an agreement of leniency between an accomplice and the State constitutes reversible error. However, a cautionary instruction on this subject is not required and has the tendency to unduly disparage the testimony of the accomplice. *Morgan v. State* (1981), 275 Ind. 666, 419 N.E.2d 964. Moreover, an instruction directed to the testimony of one witness erroneously invades the province of the jury when the instruction intimates an opinion on the credibility of a witness or the weight to be given to his testimony. *Murphy v. State* (1977), 267 Ind. 184, 369 N.E.2d 411; *Taylor v. State* (1972), 257 Ind. 664, 278 N.E.2d 273.

 In the case at bar, Wingett and Day testified on behalf of the State pursuant to a grant of immunity and plea bargain agreement, respectively. The terms of the immunity granted Wingett and the plea bargain negotiated with Day were divulged to the jury during trial. The jury was thus presented with information to assess the credibility of these witnesses. The right against self-incrimination, the compulsion to testify when granted immunity, and testimony given under the terms of a plea bargain are all matters relevant to a jury's deliberative process, but this jury already possessed knowledge of the conditions under which Wingett and Day were testifying. This instruction served no purpose other than to suggest to the jury that the accomplices' testimony might be discredited because they would not have testified unless they benefitted by the State's agreements. The substance of the instruction

unduly disparaged the testimony of the accomplices and the presentation of the instruction itself served to emphasize to the jury the credibility and weight to accord their testimony.

However, the testimony of the accomplices was inculpatory to Fox. Therefore, the instruction disparaging their testimony was actually to his benefit. The error attributed to this instruction is harmless because the negative effect would be beneficial, not detrimental, to appellant's case.

### IV. Threats Made to State Witness as Hearsay

Appellant argues that the trial court erred by refusing to strike John Wilson's testimony that threats against his family led him to make a prior inconsistent statement. Wilson was shot during the robbery. During direct examination, he testified that he knew the defendant's family and that he had talked with defendant's step-father, Fred Roland:

Q. Have you spoken to Fred Roland since the robbery?

A. Yes.

Q. Where did you speak to Fred Roland?

A. My house.

Q. Did you speak to Fred Roland about your ability to identify Ralph Fox's voice?

A. Yes.

Q. What did you talk about?

A. I told him I could have been mistaken.

Q. Are you saying to me now you were mistaken?

A. No, I ain't mistaken. They threatened my family, so I just said that, so they would get off.

Q. You are under oath now.

A. Somebody told me they threatened.

Q. Can you swear under oath that it was Ralph Fox's voice you heard at Baker's Family Restaurant that morning?

A. Yes.

The court overruled counsel's motion to strike the reference to threats. It ruled that the testimony was admissible solely to show that Wilson thought threats were made, but not to establish the threats actually occurred.

Appellant asserts that the reference to threats was inadmissible hearsay. Hearsay is defined as an extrajudicial statement offered for the truth of the matter asserted therein. *Ashley v. State* (1986), Ind., 493 N.E.2d 768. In the case at bar, the prosecutor was aware that Wilson's credibility was subject to impeachment based upon a prior inconsistent statement he made to the appellant's step-father. The prosecutor apparently chose to reveal the circumstances surrounding this prior inconsistent statement and thus counteract any possible impeachment. Obviously, Wilson's statement that someone told him that an unidentified party threatened his family is hearsay. As hearsay, it was inadmissible for the purpose of establishing that threats were made against his family. However, the testimony was admitted for the limited purpose of establishing Wilson's state of mind at the time he made his prior inconsistent statement. It therefore falls within an exception to the hearsay rule, one which permits testimony explaining a witness' state of mind. E. Cleary, *McCormick on Evidence* (3d ed. 1984) § 295.

### V. Court Involvement in Adversarial Process

Fox argues that the trial court erroneously participated in the adversarial process. He claims that the judge's questions to one State witness revealed a personal interest in disclosing to the jury a prior relationship between the appellant and co-defendant.

After the prosecutor and defense counsel had finished questioning co-defendant Day, the court summoned counsel for a bench conference. The judge requested that the prosecutor ask Day whether he had been to Cass County prior to April 1983, and, if so, why he had come. The prosecutor responded that he purposely refrained from that

line of questioning because it might delve into why Day and appellant were in prison. However, the prosecutor believed that such questions would aid the jury because otherwise it would "be left hanging as to why he came here and [sic] see Ralph Fox and they're going to want to ask why." Defense counsel's objection was two-fold: the subject of the questioning would be prior relationships and the prosecutor should decide what questions to ask the witness, not the court. After the bench conference, the judge asked Day:

Q. Mr. Day, had you ever been in Cass County before April of 1983?

A. No, sir.

Q. When you came to Cass County, you testified you went to Ralph Fox's home or you met with Ralph Fox. Now I just want you to just answer this yes or no. Did you know Ralph Fox before April of 1983?

A. Yes, sir.

Q. Did you know anyone else in Cass County before April of 1983? You can just answer that yes or no.

A. Yes.

The trial judge may not assume an adversarial role in the proceedings but may intervene in the fact-finding process and question witnesses in order to promote clarity or dispel obscurity. *Altman v. State* (1984), Ind., 466 N.E.2d 716. The purpose of the judge's discretionary power to question witnesses is to allow the court to develop the truth or present facts which may have been overlooked by the parties. *Thomas v. State* (1967), 249 Ind. 271, 230 N.E.2d 303; *Edmonds v. State* (1966), 247 Ind. 332, 215 N.E.2d 547. The judge has not abused this discretion when the intervention is conducted in an impartial manner and the defendant is not prejudiced. *Swift v. State* (1970), 255 Ind. 337, 264 N.E.2d 317. Appellant's claim is without merit. The judge intervened merely to complete the factual background and did so in an impartial, non-prejudicial manner. Therefore, his actions did not constitute an abuse of discretion.

## VI. Sufficiency of Evidence

Appellant argues that the evidence is insufficient to sustain his conviction as an accessory to battery. He maintains that there is no evidence that he participated or assisted in the shooting of the victim, John Wilson. Moreover, he maintains that it was impossible for him to aid, induce, or cause the shooting because all the testimony indicated that the shooting was an accident and that neither he nor the principal (Wingett) intended that it occur.

A conviction for accessory to a battery will be sustained when the State has proven beyond a reasonable doubt that the defendant knowingly or intentionally aided, induced, or caused another person to touch another person in a rude, insolent, or angry manner. The offense is a class C felony when it results in serious bodily injury to any other person or if it was committed by means of a deadly weapon. Ind.Code § 35–42–2–1 (Burns 1979 Repl.); Ind.Code 35–41–2–4 (Burns 1979 Repl.).

Intentional behavior requires a conscious objective, and thus may preclude accidental injuries sustained during the course of a robbery. Knowing behavior requires only that one be aware of a high probability that he is engaged in the conduct. Ind.Code § 35–41–2–2 (Burns 1979 Repl.).

Under our accessory statute, it is not necessary that the evidence show the accomplice personally participated in the commission of each element of the offense. The statute imposes a form of vicarious liability, rather than a liability based upon physical participation in the acts constituting the underlying offense. *Kappos v. State* (1984), Ind., 465 N.E.2d 1092. Hence, evidence that the accomplice acted in concert with those who physically committed the elements of the crime is sufficient to support a conviction on the accessory theory. *Wilson v. State* (1983), Ind., 455 N.E.2d 1120. The accomplice is liable "for everything ... which follows incidentally in the execution of the common design, as one of its natural and probable consequences, even though it was not in-

tended as a part of the original design or common plan...." *Breaz v. State* (1938), 214 Ind. 31, 35, 13 N.E.2d 952, 953; *Dozier v. State* (1976), 264 Ind. 329, 331, 343 N.E.2d 783, 784.

 Fox, Wingett, and Day collectively decided to rob the Baker's Family Restaurant. Fox and Wingett were responsible for entering the restaurant and robbing the proprietor and patrons while Day manned the getaway car. While inside the restaurant, both Fox and Wingett pointed their guns at the customers. During the course of the robbery, Wingett's gun discharged and shot Wilson. While there was evidence to support the idea that Wilson was shot accidentally, the jury necessarily found that Wingett acted "knowingly or intelligently" when it returned a verdict finding that Fox was an accessory to battery. Ind. Code § 35-42-2-1. It was not necessary to establish that Fox or Wingett entered the restaurant intending to shoot someone. Both entered brandishing weapons at patrons, intent on robbery. That one actually used his weapon was a natural consequence of this behavior.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER and DICKSON, JJ., concur.

PIVARNIK, J., CONCURS IN RESULT.