Bryan BROWN, Appellant,

v.

STATE of Indiana, Appellee.

No. 53S00–9310–CR–01080.

Supreme Court of Indiana.

Aug. 7, 1996.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Attorney General of Indiana, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for appellee.

SULLIVAN, Justice.

Defendant Bryan Brown was charged with fourteen felonies in connection with the robbery and brutal murder of two elderly men on October 19, 1988, in Tippecanoe County. Brown was tried before a jury in 1990, and found guilty on thirteen counts. In 1992, however, our court reversed Brown's conviction and remanded the cause for a new trial. *Brown v. State,* 587 N.E.2d 111 (Ind.1992). At the second trial, the jury again found Brown to be guilty of thirteen separate crimes.[1]

---

1. The jury found Brown guilty of the following: Count I, Murder of Lewis S. McKay, Ind.Code § 35–42–1–1 (1988); Count II, Murder of John E. Ross, *id.;* Count III, Burglary causing serious bodily injury to Ross, a Class A felony, Ind.Code § 35–43–2–1 (1988); Count IV, Burglary causing serious bodily injury to McKay, a Class A felony, *id.;* Count V, Robbery of McKay, a Class C felony, Ind.Code § 35–42–5–1 (1988); Count VI, Robbery of Ross, a Class C felony, *id.;* Count VII, Robbery of Ross while armed with a deadly weapon, a Class B felony, *id.;* Count VIII, Rob-

Brown presents four issues for review on this direct appeal:

(1) Whether Brown was denied due process of law and a fair trial by the State's calling of his co-defendant David Ohm as a witness in the presence of the jury and allowing the jury to witness Ohm's refusal to take the oath and testify, when he had indicated before trial that he would refuse to take the oath and testify;

(2) Whether the trial court erred by permitting the State to introduce as substantive evidence prior out of court statements made by its chief witness, Ohm;

(3) Whether the trial court erred by refusing to give certain tendered instructions that would have instructed the jury on how to assess Brown's accomplice Ohm's testimony given pursuant to a favorable plea agreement; and

(4) Whether Brown's rights under the Double Jeopardy Clauses of the Indiana and United States Constitutions not to be punished twice for the same offense have been violated by having judgments and sentences imposed for two counts of Confinement, in addition to having sentences imposed for Robbery and Murder.

### *Background*

Eighty year old Lewis McKay lived alone in a small home in a rural area near Lafayette, Indiana. McKay owned farm and rental property and rented out a nearby home to defendant and his family.

Defendant and McKay were well acquainted as Brown not only had performed some odd jobs for McKay, such as helping him work on his satellite receiver for his television set, but also occasionally socialized with McKay when McKay, on several occasions, invited Brown to his house to watch television and to play checkers or cards with him. However, several months before McKay's death, McKay had accused defendant of attempting to steal some of his tools, so defen-

dant was no longer welcome at McKay's home.

On the morning of October 20, 1988, McKay's friend, Esther Collins, became concerned that McKay had not called her, as he usually did. Collins drove to McKay's home to check on him. She opened the door and saw that the living room was in disarray and that a man was lying face down on the floor. Collins then summoned one of McKay's employees and they then contacted the police. As it turned out, there were two men on the living room floor, both of whom died as a result of excessive bleeding from knife wounds to their necks. The men were identified as Lewis McKay and John Ross, a friend of McKay's who often visited McKay to watch sports on his television.

Shortly after the murders, the police received an anonymous telephone call from a person stating that defendant and David Ohm were responsible for the victims' deaths. The police were not able to trace the source of the call.

On October 27, 1988, defendant was arrested. After signing a waiver of rights form, defendant gave a tape-recorded statement to the police, stating that Ohm entered the McKay home without him for about twenty minutes, and that after that, defendant looked into the home and saw two bodies lying on the floor. After that, defendant stated, both defendant and Ohm ransacked the house and stole some of McKay's belongings.

David Ohm eventually turned himself in to the police. In exchange for Ohm's pleading guilty and in exchange for testimony in any proceeding in the case against Brown, the State agreed to drop the death penalty charge against Ohm and to allow him to plead guilty to only two counts of Murder, with the sentences for each murder to be served consecutively.

bery of McKay while armed with a deadly weapon, a Class B felony, *id.;* Count IX, Confinement of McKay resulting in serious bodily injury, a Class B felony, Ind.Code § 35–42–3–3 (1988); Count X, Confinement of Ross resulting in serious bodily injury, a Class B felony, *id.;* Count XI,

Confinement of Ross while armed with a deadly weapon, a Class B felony, *id.;* Count XII, Confinement of McKay while armed with a deadly weapon, a Class B felony, *id.;* and Count XIII, Theft, a Class D felony, Ind.Code § 35–43–4–2(a) (1988).

## I

At defendant's first trial, Ohm testified as a prosecution witness and was cross-examined by the defense. In preparation for re-trial, Ohm apparently indicated that he would refuse to testify at the new trial. Following a preliminary pre-trial conference, the court entered an order indicating that if Ohm refused or was otherwise unavailable to testify, the state would introduce Ohm's testimony from the first trial;[2] that the state would produce the testimony it planned to introduce; and that the defense would then file any objections to the transcript. Defense counsel filed extensive objections, which were debated before the court in a second pre-trial conference. The court then entered an order indicating that part of the transcript that could be used and that part which was inadmissible.

At trial, Ohm was called to testify. In front of the jury, he refused to take the oath and explicitly refused to testify, despite being threatened with contempt. The jurors were excused and the court tried and convicted Ohm of contempt. When the jury returned, the court explained that Ohm had been found in contempt for refusing to testify. The trial then proceeded, using the transcript of Ohm's testimony from the first trial, edited in accordance with the court's pre-trial order.

Defendant claims that it was error for the trial court to permit Ohm to refuse to testify in front of the jury, and that the trial court further erred by not admonishing the jury with respect to his refusal to testify. Defendant cites as authority our opinions in *Tucker v. State*, 534 N.E.2d 1110 (Ind.1989) and *Aubrey v. State*, 261 Ind. 692, 310 N.E.2d 556 (1974).

In *Tucker*, during the jury trial of Danny E. Tucker, the State called witness James Eller, who was a codefendant in the charged crime. Eller was called to take the stand and, in front of the jury, refused to testify. Tucker's attorney requested that the court instruct the jury to disregard Eller's refusal

to testify, but the court did not do so. We held that it was reversible error for the trial court to permit Eller to be called before the jury when all parties knew in advance that he would invoke the Fifth Amendment and that "[t]he court further erred in refusing to admonish the jury to disregard the situation." 534 N.E.2d at 1111. In so holding, we relied on the logic enunciated in *Aubrey*:

> The natural, even inevitable, inference which is raised in the jury's mind when *an alleged accomplice refuses to testify* is that the withheld testimony would be damaging, not only to the witness, but also to the defendant. Thus, the mere refusal to speak indelibly implants adverse inferences in the minds of the jurors and reaches them in a form not subject to cross examination. Blakes refusal to testify 'may well have been the equivalent in the jury's mind of testimony.' *Douglas v. Alabama* (1965), 380 U.S. 415, 419, 85 S.Ct. 1074, 1077, 13 L.Ed.2d 934, 937.

*Id.* at 1110 (citing *Aubrey*, 310 N.E.2d at 559) (emphasis in original).

*Tucker* and *Aubrey* are important cases and we re-affirm that it is reversible error to permit a co-defendant or accomplice to take the stand in front of the jury and refuse to testify. But we find this case to be different from *Tucker* and *Aubrey* in at least two and perhaps three important respects.

First, although defendant disputes it, it is not clear to us that the court and the parties knew that Ohm would refuse to testify when he took the stand. Granted that the parties and the court prepared for trial on the assumption that Ohm would refuse to testify, it appears to us from a careful study of the record that the court and the parties did not *know* in advance that Ohm would refuse to testify.

Even if we were to agree with defendant that the court and the parties knew that Ohm would refuse to testify, we would not find *Tucker* and *Aubrey* applicable here for two additional reasons. As noted in the excerpts

---

**2.** It is well established that the former testimony of a witness who (i) is currently unavailable, (ii) previously testified under oath at a prior judicial proceeding and (iii) was available for cross examination at the prior proceeding may be admissible. *Stidham v. State*, 637 N.E.2d 140 (Ind. 1994); *Lock v. State*, 567 N.E.2d 1155 (Ind. 1991), *cert. denied*, 503 U.S. 991, 112 S.Ct. 1686, 118 L.Ed.2d 400 (1992); and *Murphy v. State*, 518 N.E.2d 1079 (Ind.1988).

from *Tucker* and *Aubrey*, the reason it is reversible error to permit a co-defendant or accomplice to refuse to testify in front of a jury is because of the inference that such refusal implants in the jury's mind as to what the witness would say. But here Ohm's testimony from the prior trial was available and used. The jury was not placed in a position of speculating about what Ohm would say; it received Ohm's testimony.

Furthermore, defendant did not object to Ohm being brought before the jury. *Cf. Tucker*, 534 N.E.2d at 1110 (calling to stand of defendant's accomplice "done over the strenuous objection of appellant's counsel"). There may have been sound strategic reasons for this, *to wit*, since the jury would be hearing Ohm's testimony from the prior trial anyway, defense counsel may well have concluded that it would be to defendant's advantage for the jury to see Ohm, observe his demeanor, and watch the trial court threaten him with contempt.

While reaffirming *Tucker* and *Aubrey*, we find that under the particular circumstances of this case, it was not error to permit Ohm to take the stand in front of the jury and refuse to testify.[3]

## II

Defendant also claims that it was error for the trial court to admit as substantive evidence certain out of court statements made by Ohm.

At the first trial, Ohm testified for the State, and was subject to cross examination by defendant. During cross examination, Ohm was questioned by defendant's attorney as follows:

Q. Now, when you turned yourself in, with Mike Collins, sometime after the homicide, did you at that date give a statement to the police?

A. No.

Q. Did you give a statement to your—to the police regarding your involvement at any time prior to receiving the plea agreement?

A. No.

Q. The first time you told them about your and Bryan Brown's involvement was when you got a plea agreement?

A. Yes.

The State claimed that this line of questioning constituted an implication that Ohm was fabricating his testimony or that he had an improper motive to testify as he did. Based on this and in accordance with Ind.Evidence Rule 801(d)(1)(B),[4] the trial court permitted the State to introduce the testimony of two other witnesses, Angie Miller and Mike Collins, to rebut this charge by repeating certain prior, consistent statements that Ohm allegedly had made to them.

At the second trial, for the reasons discussed in part I, *supra*, the State was permitted to enter into evidence a redacted transcript and edited tape of Ohm's former testimony, which included direct examination, cross examination, redirect examination, and recross examination. Because the cross examination dialogue set forth above was admitted at the second trial, the State again argued that Ohm's prior statements made to Miller and Collins also must be admissible at the second trial, in order to rebut defendant's attempt to imply that Ohm fabricated

3. Indeed, we believe the trial court handled this difficult situation extremely well. While never giving up on the possibility that Ohm would testify at the second trial as he did at the first, the trial court well executed a contingency plan in which, after a substantial amount of pre-trial work, the state used tapes and transcripts from the first trial, redacted to remove material the trial court found objectionable, subject to additional defense objections made but overruled during the pre-trial stage.

4. Federal Rule of Evidence 801(d)(1)(B), which was adopted by our Court in *Modesitt v. State*, 578 N.E.2d 649 (Ind.1991), and is now codified in Indiana as Indiana Rule of Evidence

801(d)(1)(B), characterizes certain evidence as not hearsay and, therefore, is admissible at trial. The rule reads:

A statement is not hearsay if:
(1) *Prior Statement by Witness*. The declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is ... (B) consistent with the declarant's testimony, offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, and made before the motive to fabricate arose....

Ind. Rule of Evidence 801(d)(1)(B).

his testimony or had an improper motive. The trial court conducted hearings on this issue and ultimately allowed the prior statements into evidence again at the second trial. Collin's testimony was admitted via transcript of his testimony from the first trial because he was found to be unavailable as a witness. Miller was available to testify at the second trial and testified again with respect to the prior statements made by Ohm to her.

■ Defendant objects to the admission of these prior statements on several grounds. First, defendant claims that his right to confront witnesses who testify against him, as guaranteed by the Indiana [5] and United States [6] Constitutions, was violated because Ohm and Collins were not available for cross examination at this trial. However, we have held that:

It [the right to confrontation] is secured where the testimony of a witness at a former hearing or trial on the same case is reproduced and admitted, where the defendant either cross-examined such witness or was afforded an opportunity to do so, and the witness cannot be brought to testify at trial.... In such case, there has been a prior face-to-face meeting with the opportunity to cross-examine the witness before a trier of fact in the same case....

*State v. Owings,* 622 N.E.2d 948, 951 (Ind. 1993) (citing *Brady v. State,* 575 N.E.2d 981, 987 (Ind.1991)). *See also* footnote 2, *supra.* Here, where defendant had ample opportunity to cross-examine and confront both Ohm and Collins at the first trial, and neither Ohm nor Collins were available to testify at the second trial, we hold that defendant's constitutional right to confrontation was not violated.

■ Next, defendant claims that Collin's former testimony concerning Ohm's prior statements to Collins should not have been admitted because Ohm testified that he did not recall his conversation with Collins very

clearly and that he did not know exactly what he said to Collins. Ohm testified as follows:

Q. What do you recall telling him [Collins]?

A. I know I told him some details, but, I don't remember exactly what I said.

Q. All right. Did you tell him whether you had killed anyone?

A. I don't think so.

Q. Do you know whether you told him whether Brown had killed someone?

A. I don't think so.

Q. You just don't remember?

A. I don't—I don't think I got that far.

Q. What do you remember of the conver—do you remember the conversation clearly?

A. No.

Q. All right. So, at this point in time, you don't really remember what you told him?

A. No.

Q. All right. All right, so Collins and you go to Lafayette.

A. Yes.

Q. And, you had made it clear to him that you were involved, but, you can't recall what you told him about that involvement.

A. Yes.

Citing *Watkins v. State,* 446 N.E.2d 949 (Ind.1983), defendant argues that a declarant's denial of making a prior statement or claim that he or she does not remember making a prior statement renders the prior statement inadmissible. The rationale behind this rule is that if the declarant denies making the statement or cannot remember making it, the declarant is unavailable for cross examination. The opportunity to cross examine the declarant, of course, is a requirement for the prior statement to be admissible. Ind.Evidence Rule 801(d)(1).

In *Watkins,* the trial court admitted the out of court statements of a witness, Debra

---

**5.** Ind. Const. art. I, § 13 provides, "In all criminal prosecutions, the accused shall have the right to ... meet the witnesses face to face...."

**6.** U.S. Const. amend. VI provides, " In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...."

Cunningham, in accordance with what was known as the "Patterson exception to hearsay." [7] The defendant objected to the admission of this evidence, claiming Cunningham denied making the statements or could not remember making the statements. We agreed with the "position that when the witness (out-of-court declarant) denies having made the statement in question or denies having any memory of having done so, the statement is inadmissible as *substantive evidence*, because it obviously cannot be then cross-examined," 446 N.E.2d at 960 (emphasis in original). But we went on to hold in that case that "[a]lthough Debra, in response to some questions with respect to certain of the declarations contained in the statement had memory lapses or issued denials, a fair interpretation from all of her testimony was that she was professing no memory of the events or was denying that she had observed them rather than questioning or denying that she had made the declaration in question." *Id.*

In this case, like in *Watkins*, it appears that the witness, Ohm, did not either (i) deny having made the statement or (ii) deny remembering making the statement, but rather, claimed he did not remember exactly what he said. Ohm clearly remembered having a conversation about the killings with Collins, as evidenced by his testimony:

Q. What do you recall telling him [Collins]?

A. *I know I told him some details*, but, I don't remember exactly what I said.

. . . .

Q. And, *you had made it clear to him that you were involved*, but, you can't recall what you told him about that involvement.

A. Yes.

(emphases added). Therefore, the rule in *Watkins* is not applicable here and Ohm was available for cross examination regarding the statements he made to Collins.

With respect to Ohm's prior statements made to Miller, defendant argues that the statements should not have been admitted because they were not "consistent" with Ohm's testimony and therefore do not fall within the ambit of 801(d)(1)(B).[8]

The State cites *United States v. Vest*, 842 F.2d 1319 (1st Cir.1988), *cert. denied* 488 U.S. 965, 109 S.Ct. 489, 102 L.Ed.2d 526 (1988), for the proposition that the trial testimony and prior statement need not be entirely consistent for purposes of admission of the prior statement under Evidence Rule 801(d)(1)(B). In *Vest*, the Court held that although there were some inconsistencies between the testimony of a witness and the prior statements by that witness admitted under Federal Rule of Evidence 801(d)(1)(B), the trial testimony "was consistent with respect to a fact of central importance to the trial: that Vest transferred the $35,000 payment from Waters to Tarantino." 842 F.2d at 1329. We recently took the same position as the *Vest* court, *i.e.*, that some inconsistencies between trial testimony and prior statements may not necessarily render the prior statements inadmissible for purposes of Ind.Evidence Rule 801(d)(1)(B). *Willoughby v. State*, 660 N.E.2d 570 (Ind.1996).

Here, while there were many consistencies between Ohm's trial testimony and prior statements allegedly made to Miller, defendant argues there was a major inconsistency with respect to a fact of central importance to this trial: whether defendant killed Ross and McKay. Ohm testified that both he and Brown alone killed McKay and Ross; however, Miller testified that Ohm told her quite a different story: that he and Brown did not kill Ross and McKay, but that an unidentified drug dealer to whom Brown supposedly owed money, killed them.

---

**7.** The *Patterson* rule was enunciated in *Patterson v. State*, 263 Ind. 55, 324 N.E.2d 482 (1975) and states that "[A] prior statement of a witness is admissible, not only for purposes of impeachment, but also as substantive evidence, provided the out-of-court asserter is present at trial for cross-examination." 446 N.E.2d at 960, citing *Smith v. State*, 400 N.E.2d 1137, 1141 (Ind.

1980). The *Patterson* rule, however, is now defunct as it was overruled in *Modesitt v. State*, 578 N.E.2d 649, and ultimately replaced by Ind.Rule of Evidence 801(d)(1).

**8.** *See* footnote 4, *supra*, for text of Ind.Evidence Rule 801(d)(1)(B).

Assuming portions of Miller's recounting of Ohm's statements were sufficiently inconsistent with Ohm's testimony to keep Miller's testimony from falling within the requirements of Ind.Evidence Rule 801(d)(1)(B), the consequence would be to render the testimony hearsay. Assuming no exception to the requirement that hearsay evidence be excluded is available, errors in the admission of evidence do not constitute reversible error if their probable impact on the jury, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties. *Fleener v. State,* 656 N.E.2d 1140, 1142 (Ind.1995). To the extent that Miller's recounting of Ohm's statements was inconsistent with Ohm's testimony, we perceive absolutely no detriment to defendant here. In fact, the inconsistencies here, in logic, benefitted defendant in two discrete ways. First, generally, they cast doubt upon Ohm's credibility. Second, more particularly, they indicated that defendant did not do the killing. To the extent that there may have been error in the admission of Miller's testimony, it was sufficiently minor so as not to have affected the substantial rights of the defendant.

Finally, defendant argues that both Ohm's statements to Miller and Ohm's statements to Collins were not admissible under Ind. Rule of Evidence 801(d)(1)(B) for the additional reason that defendant never expressly or impliedly alleged that Ohm's testimony was fabricated or the product of improper motive. We disagree.

Again, defendant cross-examined Ohm as follows:

Q. Now, when you turned yourself in, with Mike Collins, sometime after the homicide, did you at that date give a statement to the police?

A. No.

Q. Did you give a statement to your—to the police regarding your involvement at any time prior to receiving the plea agreement?

A. No.

Q. The first time you told them about your and Bryan Brown's involvement was when you got a plea agreement?

A. Yes.

Defendant claims that this line of questioning does not suggest that Ohm cooperated with the State only after receiving a favorable plea agreement and that he had an improper motive to testify as he did, *i.e.,* to assist the State in convicting Brown in exchange for the most lenient treatment. However, we cannot see where else this line of questioning was going and defendant does not attempt to explain it. We believe that defendant, at the very least, *implied* through this line of questioning that Ohm had an improper motive—which is all that Ind.Evidence Rule 801(d)(1)(B) requires. *See also United States v. Stuart,* 718 F.2d 931 (9th Cir.1983) (cross examination by defense regarding plea agreement of witness called into question witness's motive to testify); *United States v. Feldman,* 711 F.2d 758 (7th Cir. 1983), *cert. denied,* 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983) (defendant could offer no other inference that it intended to draw from plea agreement mention, other than recent fabrication, so prior statements to rebut were admissible). We might further add that defendant, in arguing that Ohm's prior statements were not admissible for the additional reason that the motive to fabricate a story arose before the prior consistent statement,[9] concedes in his *Reply Brief* that he implied that Ohm had an improper motive. "Ohm's alleged prior consistent statements to Collins were made with the *same improper motive as his testimony at tri-*

9. In *Evans v. State,* 643 N.E.2d 877 (Ind.1994), our court held that a prior consistent statement to rebut a charge of improper motive must have been made before the alleged improper motive to fabricate arose. *Id.* at 883. Defendant attempts to argue that Ohm's improper motive here, "to get the best deal for himself at Brown's expense," arose before he made the prior consistent statements to Collins. We do not agree. It is more likely that if Ohm had any motive to fabricate a story to obtain a favorable plea agreement, it would be during the time the plea agreement was being made with the State and thereafter, while testifying for the State in exchange for leniency. *Stuart,* 718 F.2d 931, 934–35 (introduction of prior consistent statement made prior to plea agreement was proper).

al...." *Defendant's Reply Brief* at 13 (emphasis added). "The evidence establishes that Ohm's improper motive, *which was to get the best deal for himself at Brown's expense* ...." *Id.* (emphasis added). In light of all of this, we believe that defendant at least implied that Ohm had an improper motive and that therefore, Collin's testimony regarding Ohm's prior consistent statements was properly admitted.

### III

▉ Defendant further argues that the trial court erred in refusing to give certain instructions tendered by defendant that would have instructed the jury on how to assess Ohm's testimony with respect to his favorable plea agreement.

Defendant tendered the following proposed final instructions, none of which the trial court gave:

Defendant's Tendered Final Instruction No. 5:

The testimony of an accomplice must be highly scrutinized by the trier of fact. Authority: *Pike v. State* (1989), Ind., 532 N.E.2d 3, 5.

Defendant's Tendered Final Instruction No. 6:

The testimony of an alleged accomplice, and the testimony of one who provides evidence against a Defendant as an informer for pay or for immunity from punishment or for personal advantage or vindication, must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses. You, the jury, must decide whether the witness' testimony has been affected by any of those circumstances, or by his interest in the outcome of the case, or by prejudice against the Defendant, or by the benefits that he has received either financially, or as a result of being immunized from Prosecution; and, if you determine that the testimony of such a witness was affected by any one or more of those factors, you should keep in mind that such testimony is always to be received with caution and weighed with great care.

You should never convict any Defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.

Defendant's Tendered Final Instruction No. 7:

You have heard the testimony of David Ohm. He is providing evidence for the State in exchange for a promise from the State that several charges will be dismissed, the promise of concurrent sentences, and the dismissal of a request for the death penalty. He told the State what he would testify to in exchange for this promise.

The State of Indiana may present the testimony of someone who has been promised favorable treatment in his own case in exchange for his testimony. Some people in this position are entirely truthful when testifying. Still, you should consider the testimony of David Ohm with more caution than the testimony of other witnesses. He may have had reason to make up stories or exaggerate what others did because he wanted to strike a good bargain with the State about his own case. In deciding whether you believe David Ohm's testimony, you should keep these comments in mind.

More than two decades ago our court held, in *Cherry v. State*, 258 Ind. 298, 280 N.E.2d 818 (1972), that an instruction telling the jury that the testimony of a co-defendant as a witness for the State should be carefully scrutinized was improper. Three years later, in *Newman v. State*, we held that the prosecution's nondisclosure to the jury of an agreement of leniency between the State and the defendant's accomplice was reversible error. *Newman v. State*, 263 Ind. 569, 334 N.E.2d 684 (1975). "That [*Newman*] holding requires that the agreement be disclosed to the jury, not that a cautionary instruction pertaining thereto be given." *Morgan v. State*, 275 Ind. 666, 419 N.E.2d 964 (1981). Since *Cherry* and *Newman*, our court has had several occasions [10] to revisit the rulings

---

**10.** *See Tidwell*, 644 N.E.2d 557; *Fox v. State*, 497 N.E.2d 221 (Ind.1986); *Avance v. State*, 567 N.E.2d 1149 (Ind.1991), *overruled on other* grounds by *Wright v. State*, 658 N.E.2d 563, 570 (Ind.1995); and *Morgan*, 275 Ind. 666, 419 N.E.2d 964.

in these cases and has consistently upheld their validity:

> We believe ... that Indiana's approach, as shown in, *e.g. Fox v. State* (1986), Ind., 497 N.E.2d 221 and effectuated in this case by the trial court, serves to alleviate the danger of convictions resulting from "purchased testimony" without raising other problems caused by singling out the testimony of a particular witness, *id.* Here, as per *Fox* and our other cases, the jury was fully apprised of the terms of any plea bargain struck between Dunn and the State, and therefore had sufficient information to assess the credibility of his testimony without the editorial comment necessarily implied by a cautionary instruction.

*Tidwell v. State,* 644 N.E.2d 557, 560 (Ind. 1994). Today we continue to recognize the logic behind this approach and therefore refuse to overrule, as defendant requests, the holding in *Cherry* and its progeny. It was not error for the trial court to refuse to give defendant's tendered instructions.

### IV

■ Defendant contends that the trial court violated the constitutional prohibition against double jeopardy when it entered judgment and sentenced defendant for both Murder[11] and Confinement.[12] Alternatively, defendant argues that if the trial court did not violate double jeopardy principles by entering the Murder and Confinement convictions and sentences, it did so when it entered judgment and sentenced defendant for both Confinement and Robbery.[13] While we perceive a small peripheral error on the part of the trial court, we reject defendant's double jeopardy analysis.

■ In order for a defendant to establish a double jeopardy violation, a defendant must demonstrate that the same act constitutes a violation of two distinct statutory provisions which do not require proof of an additional fact. *Wethington v. State,* 560 N.E.2d 496, 506 (Ind.1990) (quoting *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)). Clearly the murder, confinement, and robbery statutes here contain mutually exclusive elements—the killing of another human being, the confinement of another person without the person's consent, and the taking of property from another person. We have said that where confinement does not exceed that necessary to accomplish the killing, *Tackett v. State,* 642 N.E.2d 978, 979 (Ind.1994), and where the confinement is no more extensive than that required to perform the robbery, *Wethington,* 560 N.E.2d at 506, double jeopardy is violated. But those factual settings differ from this case. Here there was abundant evidence that the victims were confined, robbed and killed in sufficiently separate episodes as to not violate double jeopardy—there was an initial attack rendering the victims immobile (the confinement), followed by the cutting of their throats (the killing), which in turn was followed by the taking of their property (the robbery). We have sustained convictions in the past over double jeopardy challenges for murder and confinement, *Tackett,* 642 N.E.2d 978; *Strong v. State,* 538 N.E.2d 924, 929 (Ind.1989), and

---

11. Ind.Code § 35–42–1–1 (1988) provides that: "A person who: (1) knowingly or intentionally kills another human being; or (2) kills another human being while committing or attempting to commit arson, burglary, child molesting, consumer product tampering, criminal deviate conduct, kidnapping, rape, or robbery; commits murder, a felony."

12. Ind.Code § 35–42–3–3 (1988) provides that: "A person who knowingly or intentionally: (1) confines another person without his consent; or (2) removes another person, by fraud, enticement, force, or threat of force, from one (1) place to another; commits criminal confinement, a Class D felony ... [The offense is] a Class B felony if it is committed while armed with a deadly weapon or results in serious bodily injury

to another person." Defendant was convicted of Class B Confinement on the basis that he was armed with a deadly weapon.

13. Ind.Code § 35–42–5–1 (1988) provides that: "A person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Class A felony if it results in serious bodily injury to any person other than a defendant." Defendant was convicted of Class C Robbery although originally charged with Class A Robbery.

confinement and robbery, *Jones v. State,* 518 N.E.2d 479, 480 (Ind.1988), and find those precedents applicable here. We hold that there was no double jeopardy violation.

*Conclusion*

We affirm the judgment of the trial court.

SHEPARD, C.J., and DeBRULER, DICKSON and SELBY, JJ., concur.