**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHAEL R. FISHER**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LEBRONZE MYLES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1301-CR-25 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Judge
Cause No. 49G22-1106-FA-45029

**August 13, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

Lebronze Myles appeals his Class B felony burglary and Class C felony robbery convictions. He contends that there is insufficient evidence to sustain his convictions as an accomplice to the offenses and that his sentence is inappropriate in light of the nature of the offenses and his character. Finding that there is sufficient evidence to sustain Myles' convictions and that his sentence is not inappropriate in light of the nature of the offenses and his character, we affirm.

## Facts and Procedural History

On June 23, 2011, Myles was at Arion James' apartment gambling with two friends, Joshua Gomillia and Wendell Carter. Myles and Carter both lost money gambling, so Carter told Myles he thought it was a "good idea to do a burglary and get [his] money back," and Myles agreed. Tr. p. 101-02. Around 6:00 a.m., Myles, Gomillia, and Carter got in Myles' car with Carter driving. They drove toward Carter's neighborhood until Gomillia told him to stop in front of the home of the victim, E.K.

Gomillia got out of the car, covered his face, got his gun, and walked toward the front door. Carter covered his face and followed him. The two men rang the doorbell, E.K. answered the door, and Gomillia forced his way into the home. The men took two televisions, a laptop, credit cards, a cellphone, jewelry, and E.K.'s car. They also forced E.K. to perform oral sex on them while holding a gun to her head. *Id.* at 15-18.

About thirty minutes after the men entered the house and it started to get light outside, Myles covered his face and came into the home to get Carter and Gomillia. Myles said, "Let's go," *id.* at 21, and the three of them left the home. Myles and

2

Gomillia got into Myles' car, and Carter got into E.K.'s orange Saturn Vue in her garage and drove away. Myles drove back to James' apartment where Gomillia unloaded some of the stolen items and changed his clothes. Myles then drove to a nearby gas station where Gomillia used one of E.K.'s stolen credit cards. They then returned to James' apartment. Myles left to run an errand with his mother and then came back to James' apartment once again.

Myles and Carter were arrested at James' apartment later that day, and Gomillia turned himself in the next day. The State charged Myles with two counts of Class A felony criminal deviate conduct, Class B felony robbery, Class B felony burglary, Class B felony criminal confinement, and Class D felony auto theft. The State later dismissed the Class A felony criminal deviate conduct charges.

A bench trial was held. After the State's case, the trial court granted Myles' motion for a directed verdict with regard to the Class D felony auto theft charge. The trial court then found Myles guilty of Class B felony burglary and Class C felony robbery, but not guilty of Class B felony criminal confinement. The trial court sentenced Myles to concurrent sentences of eight years for robbery and twelve years with four years suspended and the last two years to be completed through the Community Corrections Agency for burglary.

Myles now appeals.

**Discussion and Decision**

3

Myles makes two arguments on appeal: (1) that there is insufficient evidence to sustain his convictions as an accomplice to robbery and burglary and (2) that his sentence is inappropriate in light of the nature of the offenses and his character.

## I. Sufficiency of the Evidence

Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, this Court does not reweigh the evidence or judge the credibility of the witnesses. *Bond v. State*, 925 N.E.2d 773, 781 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*. We consider only the evidence most favorable to the judgment and the reasonable inferences draw therfrom and affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* Reversal is appropriate only when a reasonable trier of fact would not be able to form inferences as to each material element of the offense. *Id.*

Myles was convicted as an accomplice to Class B felony burglary and Class C felony robbery. The evidence need not show that the defendant personally participated in the commission of each element of a crime to be convicted of that crime under a theory of accomplice liability. *Bruno v. State*, 774 N.E.2d 880, 882 (Ind. 2002), *reh'g denied*; *Fox v. State*, 497 N.E.2d 221, 227 (Ind. 1986). Indiana's accomplice liability statute states that a person "who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense . . . ." Ind. Code § 35-41-2-4. Factors that are to be considered to determine whether a defendant acted as an accomplice include: "(1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of

4

conduct before, during, and after the occurrence of the crime." *Wieland v. State*, 736

N.E.2d 1198, 1202 (Ind. 2000).

Indiana Code section 35-43-2-1 governs burglary and provides in relevant part:

A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony. However, the offense is:
> (1) a Class B felony if:
>> (A) it is committed while armed with a deadly weapon; or
>> (B) the building or structure is a:
>>> (i) dwelling; or
>>> (ii) structure used for religious worship; . . . .

Robbery is governed by Indiana Code section 35-42-5-1, which provides in relevant part:

A person who knowingly or intentionally takes property from another person or from the presence of another person:
> (1) by using or threatening the use of force on any person; . . .
commits robbery, a Class C felony.

The evidence presented at trial was sufficient to show that a burglary and robbery were committed by Carter and Gomillia and that Myles was an accomplice. Myles concedes that he was "present at the crime scene . . . and acquiesced in the actions of the principals after he was aware of the crime," Appellant's Br. p. 6, but argues that there is still not sufficient evidence to convict him as an accomplice to burglary and robbery. We disagree.

Carter and Gomillia broke into E.K.'s home with a gun to commit a theft and stole E.K.'s property by threatening the use of force against her, satisfying the requirements for Class B felony burglary and Class C felony robbery. Myles' conduct in these offenses satisfies all four factors to be considered for accomplice liability. He was present at the scene of the crime, as he was in the car that took Carter and Gomillia to E.K.'s home. Tr.

5

p. 184-88. Carter also testified that Myles agreed when he told him that he thought it was a "good idea to do a burglary and get [his] money back." *Id.* at 102. While Myles did not enter E.K.'s home with Carter and Gomillia, he did not leave; rather, he stayed in the car, presumably as a lookout, and entered the home with his face covered to tell his friends it was time to go when it started to get light outside. *Id.* at 86-88, 107-08, 123. He then drove the car away from E.K.'s home and later drove Gomillia to the gas station where Gomillia used E.K.'s stolen credit card. At no time did Myles ever call the police. This evidence shows that Myles was present at the scene, was in companionship with those engaged in the robbery and burglary, failed to oppose the crimes, and agreed to be involved with and help facilitate the crimes before, during, and after their commissions.

We therefore find the evidence is sufficient to sustain Myles' convictions as an accomplice to both Class B felony burglary and Class C felony robbery.

## II. Inappropriate Sentence

Myles also contends that his sentence is inappropriate in light of the nature of the offenses and his character. Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007) (citing *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007)). The

defendant has the burden of persuading us that his sentence is inappropriate. *Id.* (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case. *Id.* at 1224. In assessing whether a sentence is inappropriate, appellate courts may take into account whether a portion of the sentence is ordered suspended or is otherwise crafted using any of the variety of sentencing tools available to the trial judge. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). These tools include probation, home detention, placement in a community corrections program, executed time in a Department of Correction facility, concurrent rather than consecutive sentences, and restitution/fines. *Id.*

The sentencing range for a Class B felony is six to twenty years, with ten years being the advisory term. Ind. Code § 35-50-2-5. The sentencing range for a Class C felony is two to eight years, with four years being the advisory term. Ind. Code § 35-50-2-6. Here, the trial court sentenced Myles to concurrent sentences of twelve years with four years suspended and the last two years to be completed through the Community

7

Corrections Agency for Class B felony burglary and eight years for Class C felony robbery. Both sentences are within the statutory ranges.

Regarding the nature of the offenses, there is nothing in the record that indicates that this sentence is inappropriate. Myles was an active participant to a serious robbery and burglary during which the principals threatened the use of a gun on the victim and sexually assaulted her. For his part, Myles agreed that Carter should do a burglary to get his money back, and he allowed Carter and Gomillia to use his car to drive to E.K.'s home. Myles also acted as a lookout during the burglary and robbery, covering his face and going inside to tell his friends it was time to go when it started to get light outside. Myles was the getaway driver after the burglary and robbery, taking Gomillia back to James' apartment so that he could drop off the stolen items and change his clothes. Myles then drove Gomillia to the gas station to use E.K.'s stolen credit card. The nature of these offenses is serious.

Regarding Myles' character, he has no juvenile or criminal history. Myles argues that this lack of criminal history is a "remarkable character trait" for someone who has grown up in his environment, around "the criminal tendencies of his friends." Appellant's Br. p. 15. However, he still has a previous arrest, drove with a suspended license on the day of the offenses, and used marijuana "up to four times weekly." Tr. p. 181, 199; PSI p. 8, 19; *see Pickens v. State*, 767 N.E.2d 530, 534 (Ind. 2002) ("[T]he court may consider arrest records and admissions of illegal conduct as they reflect on the defendant's character."). We therefore find that Myles' character does not warrant reducing his sentence.

After due consideration, we cannot say that Myles' twelve-year aggregate sentence with four years suspended is inappropriate in light of the nature of the offenses and his character, when he could have faced up to twenty-eight years of imprisonment.

Affirmed.

BAKER, J., and FRIEDLANDER, J., concur.