In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-3224

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY PEMBERTON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:19-CR-00268-001 — **Tanya Walton Pratt**, *Chief Judge.*

ARGUED OCTOBER 3, 2023 — DECIDED NOVEMBER 1, 2023

Before BRENNAN, SCUDDER, and ST. EVE, *Circuit Judges.*

PER CURIAM. Anthony Pemberton sold methamphetamine to an undercover informant and pleaded guilty to distributing drugs, 21 U.S.C. § 841(a)(1). The district court then ruled that his 2003 conviction for conspiracy to commit robbery under Indiana law was a "serious violent felony" under 18 U.S.C. § 3559(c)(2)(F), thereby subjecting him to a 15-year mandatory minimum sentence. On appeal he argues that Indiana's crime of conspiracy is not a categorical match to the

federal conspiracy counterpart of § 3559(c)(2)(F) and thus the state crime is not a "serious violent felony" meriting the enhanced minimum. But Pemberton raised this argument for the first time on appeal and therefore forfeited it. Because he has not demonstrated that the district court plainly erred when it determined his prior conviction was a serious violent felony, we affirm.

## I. Background

Pemberton was sentenced after he pleaded guilty to two counts of possessing and distributing at least 50 grams of methamphetamine in 2019, 21 U.S.C. § 841(a)(1). At sentencing, the parties disputed which statutory minimum sentence applied. Ordinarily, distributing the quantity of drugs Pemberton admitted to distributing carries a 10-year minimum sentence under § 841(b)(1)(A)(viii). But if the defendant was previously convicted of a "serious violent felony," a 15-year minimum applies. *Id.* The phrase "serious violent felony" is defined in 21 U.S.C. § 802(58), which cross-references the definition in 18 U.S.C. § 3559(c)(2)(F). The government identified a prior conviction that might satisfy that definition: Pemberton's 2003 conviction under Indiana law for conspiracy to commit robbery, Ind. Code 35-41-5-2.

Pemberton objected to the application of the enhanced mandatory minimum on two grounds related to the circumstances of his offense. First, he argued that the facts underlying his 2003 conviction fell under an exception to the definition of "serious violent felony" where no dangerous weapon was used. *See* 18 U.S.C. § 3559(c)(3)(A). On appeal, he abandons this argument. Second, he contended that his particular conduct did not qualify as a conspiracy under federal law. In his view, a conspiracy under federal law required an

agreement between two people to commit an unlawful act. But in his case, only his coparticipant carried a weapon, Pemberton had not agreed that his coparticipant would carry a weapon, and his coparticipant was never convicted. Therefore, Pemberton argued, he was not guilty of conspiracy under federal law.

The district court overruled the objections, found that Pemberton's 2003 conviction was a "serious violent felony," and sentenced Pemberton to 15 years' imprisonment and 10 years' supervised release. It reasoned that the facts of his 2003 crime included a dangerous weapon that caused serious harm (his coconspirator had fired a gun during the robbery, hitting a bystander), and his plea of guilty to conspiracy to commit armed robbery precluded him from denying his involvement in a conspiracy. After that ruling, both Pemberton and the government argued for the 15-year minimum sentence, and the court adopted that recommendation after considering the parties' arguments and 18 U.S.C. § 3553(a) factors.

## II. Analysis

On appeal, Pemberton has reframed his objection to the enhancement. Rather than focus on the facts of his crime, he now argues that his Indiana conviction for conspiracy to commit robbery is not a categorical match to the generic federal offense of conspiracy, and therefore falls outside the definition of "serious violent felony" in 18 U.S.C. § 3559(c)(2)(F) and 21 U.S.C. § 802(58). He contends (and the government agrees) that Indiana conspiracy covers both "bilateral" and "unilateral" conspiracies; the latter involves a person who agrees to commit a crime with, for example, an undercover agent who does not sincerely conspire to break the law. *See Tidwell v.*

*State*, 644 N.E.2d 557, 559 (Ind. 1994). Pemberton contends that the generic federal definition of conspiracy is narrower. In his view, federal conspiracy generally requires a bilateral agreement between two or more people who intend to commit a crime. *See United States v. Corson*, 579 F.3d 804, 811 (7th Cir. 2009). The government responds that Pemberton forfeited this categorical-mismatch argument. Therefore, it concludes, our review is limited to whether the district court plainly erred. It also contends that on the merits the generic federal definition of conspiracy includes unilateral conspiracies. Thus, it insists, the district court properly applied the enhanced mandatory minimum.

Before we address the issue of forfeiture, we clarify further the legal background and where the parties agree. A "serious violent felony" is "a Federal or State offense … consisting of … robbery (as described in [18 U.S.C.] section 2111, 2113, or 2118) … or attempt, conspiracy, or solicitation to commit any of the above offenses." 18 U.S.C. § 3559(c)(2)(F)(i). Pemberton does not dispute that Indiana's offense of robbery qualifies as "robbery" under § 3559. The parties dispute only whether a conspiracy offense under Indiana law qualifies as a state "conspiracy" offense for purposes of § 3559. In squaring off, the parties also agree that the answer requires resort to the familiar categorical approach, under which this court must compare the least-culpable conduct of the state offense with the generic federal offense. *Mathis v. United States*, 579 U.S. 500, 509 (2016). If the state offense sweeps more broadly than the generic federal offense, then the defendant does not qualify for the enhancement. *Id.*; *see also United States v. Elder*, 900 F.3d 491, 499 (7th Cir. 2018) (applying the categorical approach to a separate 21 U.S.C. § 841 enhancement for "felony drug offense"); *accord United States v. Leaverton*, 895 F.3d 1251, 1254

(10th Cir. 2018) (applying categorical approach to "serious violent felony" definition).

That brings us to the issue of forfeiture. If Pemberton raised his argument about a categorial mismatch for the first time on appeal, then our review of the district court's application of the enhancement is deferential: We review the application only for plain error—an error that is obvious and affects the defendant's substantial rights as well as the fairness and integrity of the judicial proceeding. *See* FED R. CRIM. P. 52(b); *Puckett v. United States*, 556 U.S. 129, 135 (2009).

Pemberton contends that his argument on appeal about a categorical mismatch is consistent with his fact-based objection to the enhancement in the district court. We disagree. Nothing about Pemberton's fact-based arguments in the district court alerted the judge and the government to the categorical-mismatch argument he now raises. As mentioned earlier, Pemberton raised two fact-based arguments about the serious violent felony enhancement in the district court: (1) the exception at § 3559(c)(3) applied to the facts underlying his conviction, and (2) the facts of his Indiana conviction showed he did not conspire to commit robbery. But these two case-specific inquiries are incompatible with the purely legal, categorical-approach argument he now raises. For under the categorical approach, judges cannot even consider the "underlying brute facts" of the conviction. *Mathis*, 579 U.S. at 509 (internal quotation marks omitted). Because Pemberton's objection did not challenge the enhancement on categorical grounds, he forfeited the objection. *See United States v. Thomas*, 845 F.3d 824, 831 (7th Cir. 2017).

We thus must limit our review to whether the district court plainly erred in applying the enhancement for a

"serious violent felony." Under that standard, "the district court commits plain error when there is '(1) an error or defect, (2) that is clear or obvious (3) affecting the defendant's substantial rights (4) and seriously impugning the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Hammond*, 996 F.3d 374, 400 (7th Cir. 2021) (quoting *United States v. Goodwin*, 717 F.3d 511, 518 (7th Cir. 2013)). Here, we must decide whether it is "obvious," *Puckett*, 556 U.S. at 135, that conspiracy under Indiana law in 2003 was broader than the federal definition of conspiracy. As we now explain, that is not obvious.

In determining whether the federal definition of conspiracy matches Indiana's broad, "unilateral" approach, we examine the generic definition of conspiracy in 1994, when Congress enacted the sentencing enhancement for a "serious violent felony." The government urges us to examine generic trends in the criminal law of conspiracy that occurred *after* Congress enacted the enhancement. But we think the categorical approach requires us to consider the generic offense of conspiracy as defined at the time of passage in 1994. *Accord Pugin v. Garland*, 599 U.S. 600, 604 (2023) (relying on dictionaries from time of enactment to determine generic offense); *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 391 (2017) (same). In doing so, we consider contemporaneous federal and state laws, dictionary definitions, and the Model Penal Code. *Pugin*, 600 U.S. at 604.

When we examine the state of the law in 1994, we see signals that point in opposite directions for the generic meaning of conspiracy. On the one hand, as Pemberton contends, federal conspiracy law has historically followed the bilateral-only approach. The Supreme Court has observed that federal

law has followed the bilateral approach to conspiracies because a genuine agreement among two or more people to commit a crime increases the reach of the crime, the chance that it will succeed, and the threat to the public. *See Callanan v. United States*, 364 U.S. 587, 593–94 (1961); *see also Salinas v. United States*, 522 U.S. 52, 65 (1997). Federal drug coconspirators, for example, must "actually intend to carry out the agreed-upon criminal plan." *Corson*, 579 F.3d at 811. Likewise, "[a] defendant is not liable for conspiring solely with an undercover government agent or a government informant." *Id.* (citing *United States v. Mahkimetas*, 991 F.2d 379, 383 (7th Cir. 1993)). This historical evidence points toward a categorical mismatch between the federal definition of conspiracy and Indiana's.

On the other hand, when § 3559 was enacted in 1994, many states, including Indiana, had adopted the unilateral approach, which the Model Penal Code endorsed. The Code requires only that a coconspirator "agree (or believe he is agreeing) with another" to commit a crime. Model Penal Code § 5.03(1)(a) & n.1. The adoption was not universal, and even some states that adopted the Model Penal Code still rejected the unilateral theory of conspiracy. *See, e.g.*, *People v. Foster*, 457 N.E.2d 405, 408 (Ill. 1983). Nonetheless, by 1994, a significant minority of jurisdictions—20 states and territories, according to Pemberton—had adopted the unilateral theory of conspiracy. *See* 1 Wharton's Crim. L. § 8.4 (rev. Sept. 2023). This widening acceptance suggests that the generic federal definition of conspiracy may similarly include the unilateral theory.

Against this backdrop, we conclude that the answer to whether Indiana's definition of conspiracy is a categorical

mismatch to the federal counterpart is unclear. Because state and federal authorities point in different directions, it is not obvious that the generic definition of conspiracy in 1994 either included or excluded the unilateral theory of conspiracy. And because it is not obvious, the district court did not plainly err in applying the enhancement for a "serious violent felony" based on the 2003 Indiana conspiracy conviction. *See United States v. Thomas*, 835 F.3d 730, 734 (7th Cir. 2016) ("While there are good arguments on each side of the debate, the fact that the law is unsettled itself prevents any discovery violation from being plain error."); *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004) (the plain-error burden "should not be too easy"). The answer to the question of the generic meaning of conspiracy must wait for a case in which it has been preserved.

Pemberton cautions that this result creates a circuit split because the Ninth Circuit has held that the generic federal conspiracy offense includes only bilateral conspiracies. *See United States v. Brown*, 879 F.3d 1043, 1048 (9th Cir. 2018). But that overlooks the difference in the standard of review. The defendant in *Brown* preserved the objection, and so the court reached the issue on a fresh slate. *See id.* As we have previously said, the standard of review can make a difference in the outcome of a case. *See United States v. Haas*, 37 F.4th 1256, 1265 (7th Cir. 2022) (reviewing an issue for plain error does not require this court to "choose sides" of a circuit split). The Tenth Circuit, for example, when applying plain-error review to a district court's decision defining generic conspiracy under the Sentencing Guidelines, affirmed the district court's use of the unilateral approach. *See United States v. Maloid*, 71 F.4th 795, 816 (10th Cir. 2023).

Finally, in his reply brief, Pemberton asks us to delay our decision in this case. He notes that he might be eligible for relief from the 15-year minimum through the "safety valve" of 18 U.S.C. § 3553(f) if the Supreme Court overturns our precedent in *United States v. Pace*, 48 F.4th 741, 756 (7th Cir. 2020), when the Court decides *Pulsifer v. United States*, No. 22-340 (argued Oct. 2, 2023). Because Pemberton has sought to preserve his argument for Supreme Court review, we deny his request to stay the case until the Court decides *Pulsifer*.

Thus, we AFFIRM the judgment of the district court.