22-2996; 23-6050
*United States v. Roderique (Shannon)*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

      **At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of May, two thousand twenty-four.**

PRESENT:
> GERARD E. LYNCH,
> JOSEPH F. BIANCO,
> MARIA ARAÚJO KAHN,
>     *Circuit Judges.*

———————————————————————

UNITED STATES OF AMERICA,

      *Appellee,*

v.

NIKIA KING, a/k/a SIS,

      *Defendant,*

KAREEM RODERIQUE, ROBERT SHANNON,

      *Defendants-Appellants.*

22-2996-cr;
23-6050-cr

———————————————————————

FOR APPELLEE:

BRANDON D. HARPER, Assistant United States Attorney (Michael R. Herman and David Abramowicz, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, New York.

FOR DEFENDANT-APPELLANT
KAREEM RODERIQUE:

Ezra Spilke, Law Offices of Ezra Spilke, PLLC, Brooklyn, New York.

FOR DEFENDANT-APPELLANT
ROBERT SHANNON:

KRISTEN M. SANTILLO, Gelber & Santillo PLLC, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (John P. Cronan, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment as to Defendant-Appellant Robert Shannon, entered on December 19, 2022, is **AFFIRMED**.[1]

Shannon appeals the district court's judgment of conviction entered after a jury trial at which he was found guilty of conspiracy to distribute and possess with intent to distribute at least 400 grams of fentanyl and at least 100 grams of heroin, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)–(B) ("Count One"), and using a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) ("Count Two"). The charges arose from Shannon's participation in a large-scale drug-trafficking operation run out of a "stash house" in East Orange, New Jersey (the "Stash House"). Shannon was sentenced principally to 200 months' imprisonment on Count One and a consecutive sixty months' imprisonment on Count Two, for a total term of 260 months' imprisonment, to be followed by five years of supervised release. On appeal, Shannon argues that the evidence adduced at trial was insufficient to support the jury's verdict on either count, and that the district court procedurally erred at sentencing by miscalculating the weight of drugs attributable

---

[1] Ezra Spilke, counsel for Defendant-Appellant Kareem Roderique, has moved for permission to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), and the government has moved to dismiss Roderique's appeal as barred in part by the waiver of appeal in his plea agreement, and for summary affirmance of the balance of the judgment. On April 4, 2024, we also received a *pro se* submission from Roderique styled as a request for a certificate of appealability with respect to the district court's denial of his 28 U.S.C. § 2255 motion. We address these motions in a separate order.

to him and determining that he qualified for the career-offender sentencing enhancement under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

### I. Sufficiency of the Evidence

We review a challenge to the sufficiency of the evidence *de novo*. *See United States v. Requena*, 980 F.3d 30, 43 (2d Cir. 2020). A defendant who makes such a challenge "bears a heavy burden." *United States v. Connolly*, 24 F.4th 821, 832 (2d Cir. 2022). In reviewing whether a conviction is supported by sufficient evidence, "we are required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury's verdict." *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021). We must affirm the conviction "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Silver*, 864 F.3d 102, 113 (2d Cir. 2017) (internal quotation marks and citation omitted). Drug quantity is an element of a Section 841(b) offense that the government must prove beyond a reasonable doubt. *See United States v. Pauling*, 924 F.3d 649, 655 (2d Cir. 2019); *United States v. Gonzalez*, 420 F.3d 111, 122 (2d Cir. 2005).

First, we find unpersuasive Shannon's challenge to the sufficiency of the evidence on Count One with respect to the jury's finding that the conspiracy involved at least 400 grams of fentanyl and at least 100 grams of heroin. A cooperating witness, testifying under the pseudonym "Ken Johnson," testified in detail regarding his involvement in the narcotics operation run out of the Stash House and Shannon's extensive participation in that operation. For example, Johnson testified that Shannon contributed money toward rent for the Stash House, helped supply narcotics, mixed and packaged quantities for sale, and recruited workers to help bag up the narcotics. With respect to

the quantities of narcotics distributed, Johnson testified that, starting in late July or August 2020, Shannon and the other co-conspirators who were part of this narcotics operation sold about two to three kilograms of narcotics—primarily heroin and fentanyl—every month until the arrest of Johnson, Shannon, and another co-conspirator in late October 2020. Johnson's testimony regarding Shannon's participation in the conspiracy, as well as the drug quantities involved, was corroborated by, *inter alia*: (1) video footage and testimony of law enforcement agents who observed Shannon, immediately prior to his arrest, walking out of the Stash House holding a black bag, which contained glassine and plastic bags of what was later determined to be a wholesale quantity of approximately ninety-six grams of fentanyl; (2) the seizure from the Stash House on the day of Shannon's arrest of approximately 2,869 grams of fentanyl (or combinations of fentanyl and heroin) and approximately 564 additional grams of heroin (containing no fentanyl), along with drug paraphernalia and two loaded guns; and (3) video clips showing Shannon entering and exiting the Stash House on at least fifteen different days in the five weeks before his arrest and the seizure of the narcotics from the Stash House. Drawing all reasonable inferences from this evidence in the government's favor, there was sufficient evidence from which a rational jury could find that Shannon participated in a conspiracy to distribute at least 400 grams of fentanyl and at least 100 grams of heroin.

Although Shannon concedes that more than 400 grams of fentanyl and 100 grams of heroin were recovered from the Stash House on the day of his arrest, he argues that there was insufficient evidence to attribute all of those drugs, or other drug quantities from transactions involving Johnson and other co-conspirators, to Shannon because Johnson testified that he (Johnson) controlled access to the Stash House and, along with the other co-conspirators, was involved in other drug transactions that did not involve Shannon. We disagree. "It is well settled that individual

4

defendants are responsible for all reasonably foreseeable quantities of drugs distributed by a conspiracy of which they were members." *United States v. Johnson*, 633 F.3d 116, 118 (2d Cir. 2011) (per curiam). Moreover, "[w]e have frequently noted that 'one who deals in large quantities of narcotics may be presumed to know that he is a part of a venture which extends beyond his individual participation.'" *United States v. Murray*, 618 F.2d 892, 902 (2d Cir. 1980) (quoting *United States v. Magnano*, 543 F.2d 431, 433–34 (2d Cir. 1976)). Here, a rational jury could find, based upon Shannon's extensive involvement with Johnson and the Stash House's operation, that Shannon knew he was part of a narcotics conspiracy that involved the distribution of at least 400 grams of fentanyl and at least 100 grams of heroin, even though Johnson was involved in drug transactions not involving Shannon. Therefore, we conclude that the evidence was sufficient to sustain a conviction for the narcotics conspiracy charged in Count One.

Shannon's sufficiency challenge to his firearms conviction on Count Two is similarly unavailing. "To convict for possession of a firearm in furtherance of a drug trafficking offense under 18 U.S.C. § 924(c), the government must prove that the defendant possessed the firearm and that the possession occurred in furtherance of a drug trafficking crime." *Willis*, 14 F.4th at 184 (internal quotation marks and citation omitted). "Under this Court's precedent, 'the requirement in § 924(c)(1) that the gun be possessed in furtherance of a drug crime may be satisfied by a showing of some nexus between the firearm and the drug selling operation.'" *United States v. Lewter*, 402 F.3d 319, 322 (2d Cir. 2005) (quoting *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001)). Thus, although "the mere presence of a weapon at the scene of a drug crime, without more, is insufficient to prove that the gun was possessed in furtherance of the drug crime," *United States v. Snow*, 462 F.3d 55, 62 (2d Cir. 2006) (emphasis, internal quotation marks, and citation omitted), this requirement is satisfied where the gun had "the potential of facilitating[] the drug trafficking

5

offense," *Smith v. United States*, 508 U.S. 223, 238 (1993) (alterations adopted) (internal quotation marks and citation omitted). For example, as relevant here, "Section 924(c)(1)(A) applies where the charged weapon is readily accessible to protect drugs, drug proceeds, or the dealer himself." *Willis*, 14 F.4th at 184. We have emphasized that whether a "nexus" exists between a gun and a drug-trafficking conspiracy "is a very fact-intensive question requiring a careful examination of, among other things, where the gun was located and what else was found in the apartment, and thus well-suited to resolution by a jury." *Snow*, 462 F.3d at 63 (internal quotation marks and citation omitted).

Here, Johnson testified that, in October 2020, he found several guns belonging to the owner of the Stash House. He returned most of them to the owner, but gave two of them to Shannon and another co-conspirator, who placed them in nightstand drawers next to a bed in the Stash House. Johnson also testified that Shannon had at times stayed overnight at the Stash House, and Johnson agreed that the guns were "available to be used" if the Stash House was robbed and that he understood that "those guns were there to protect the [Stash] [H]ouse." App'x at 519. Johnson's testimony was corroborated by evidence that law enforcement agents had seized two loaded guns from nightstands in a bedroom in the Stash House, next to the storage room where agents found multiple kilograms of narcotics. A wax material of the type used to hold fentanyl or heroin was resting atop the magazine of one of the firearms. That evidence was sufficient for the jury to rationally find the requisite nexus between the possession of the guns by Shannon and other co-conspirators at the Stash House and the drug-trafficking conspiracy. *See Lewter*, 402 F.3d at 322 ("Possession of a firearm to defend a drug stash clearly furthers the crime of possession with intent to distribute the contents of that stash."); *Finley*, 245 F.3d at 202–03 (affirming conviction under § 924(c)(1) where unloaded sawed-off shotgun was stored under pile of clothes in the room from

6

which drugs were sold).

In challenging this evidence, Shannon points to Johnson's testimony that the guns had belonged to the owner of the Stash House from whom they rented and, when the conspirators discovered the guns in the Stash House in October 2020, Johnson did not want them to remain in the Stash House because of the additional legal exposure that would result from the possession of the firearms if they were ever seized by law enforcement. To that end, Johnson further testified that Shannon and the other co-conspirator were "suppose[d] to" take the two guns out of the house, "but they didn't." App'x at 515; *see also id.* at 771–72 (testifying that Shannon and the other co-conspirator "held the guns in [their] hand[s]" and that "[t]hey left them there" in the Stash House, even though "they want[ed] to take them out of there"). Based on this testimony, Shannon argues that the guns "were only being stored in the Stash House temporarily until they could be removed," and that a jury could not rationally find that they were being possessed in furtherance of the narcotics conspiracy. Appellant's Br. at 18. We disagree.

Even if Johnson's stated intention was to have the two loaded guns removed from the Stash House, a rational jury could still find, especially based on the location of the guns and the narcotics and related items found nearby, that, for whatever period of time those guns remained in the Stash House, they were maintained by Shannon and the other co-conspirator in a place where they were "readily accessible to protect drugs or drug proceeds." *Willis*, 14 F.4th at 185. Although Shannon offered the jury a competing inference from Johnson's testimony, the jury was free to reject that inference and, instead, reasonably infer from the totality of the evidence that the guns, after they were found and placed in the drawers, were knowingly possessed by Shannon in furtherance of the drug trafficking conspiracy. *See United States v. Florez*, 447 F.3d 145, 154–55 (2d Cir. 2006) ("In assessing sufficiency, we are obliged to view the evidence in its totality and in the light most

7

favorable to the prosecution, mindful that the task of choosing among permissible competing inferences is for the jury, not a reviewing court."). Thus, the evidence was sufficient to support Shannon's conviction on Count Two under Section 924(c).

## II. Sentencing

Shannon's remaining challenges on appeal concern the district court's calculation of his Guidelines range at sentencing. First, he argues that the district court erred in determining the drug weight attributable to him for substantially the same reasons that he challenged the sufficiency of the evidence as to the jury's verdict regarding the quantities. Second, he contends that the district court erroneously classified him as a career offender under U.S.S.G. § 4B1.1(a).

We review a district court's sentencing determination for procedural reasonableness under a "deferential abuse-of-discretion standard." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks and citation omitted). "A district court commits procedural error where it . . . makes a mistake in its Guidelines calculation." *Id*. at 190. "While factual determinations underlying a district court's Guidelines calculations are reviewed for clear error, a district court's application of the Guidelines is reviewed *de novo*." *United States v. Conca*, 635 F.3d 55, 62 (2d Cir. 2011).

### A. Drug Quantity

Shannon contends that the district court erred in determining, with respect to the narcotics conspiracy, that he was responsible for at least four kilograms of fentanyl, as well as over 500 grams of heroin recovered from the Stash House. Those drug quantities were sufficient to trigger a base offense level of thirty-four, pursuant to U.S.S.G. § 2D1.1(c)(3). Shannon specifically contends that, in calculating this offense level, "the [d]istrict [c]ourt failed to make a particularized assessment of the scope of Shannon's individual agreement to participate in the Drug Conspiracy and the drug

weight attributable to his role in that specific conspiracy." Appellant's Br. at 33–34. We disagree.

"The quantity of drugs attributable to a defendant at the time of sentencing is a question of fact for the district court, subject to a clearly erroneous standard of review." *United States v. Hazut*, 140 F.3d 187, 190 (2d Cir. 1998). Accordingly, this Court will reverse only if it is "left with the definite and firm conviction that a mistake has been committed" in that calculation. *United States v. Reilly*, 76 F.3d 1271, 1276 (2d Cir. 1996) (internal quotation marks and citation omitted). Where the drug quantity seized does "not reflect the scale of the offense," both the Guidelines and the law of this Court specifically authorize sentencing courts to "approximate" the total quantity involved. U.S.S.G. § 2D1.1, application note 5; *see also United States v. Jones*, 30 F.3d 276, 288 (2d Cir. 1994). In reaching an approximation, a sentencing court's determination need only be supported by "a preponderance of the evidence." *United States v. Moore*, 54 F.3d 92, 102 (2d Cir. 1995). Moreover, as discussed *supra*, "[i]t is well settled that individual defendants are responsible for all reasonably foreseeable quantities of drugs distributed by a conspiracy of which they were members." *Johnson*, 633 F.3d at 118.

In finding that Shannon was responsible for at least four kilograms of fentanyl and at least 500 grams of heroin based upon his participation in the charged narcotics conspiracy, the district court relied upon, *inter alia*, the following trial evidence: (1) the seizure of over 2,900 grams of fentanyl and over 500 grams of heroin on the day of Shannon's arrest; (2) Johnson's testimony that Shannon and the other conspirators sold heroin and fentanyl out of the East Orange Stash House from late July or August 2020 until late October 2020 and, during each month of that period, the conspirators sold two to three kilograms of fentanyl and heroin (the majority of which was fentanyl); and (3) testimony that, on the day of his arrest, Shannon called Johnson to request fifty grams of fentanyl. Although Shannon contends that the district court failed to consider his specific

9

involvement in the conspiracy when determining the quantity that should be attributable to him, the record indicates otherwise. For example, in beginning its analysis as to "the drug quantity that should be attributed to . . . Shannon under Section 2D1.1(c)," the district court specifically stated: "There was extensive testimony and evidence at trial describing the significant quantities of controlled substances that were at issue in this conspiracy. *And there was also considerable evidence of . . . Shannon's involvement in that drug dealing*." App'x at 1153 (emphasis added). The district court then proceeded to describe in detail Shannon's involvement in the conspiracy, including Shannon's connection to the Stash House that (1) "the cooperating witness testified . . . Shannon and others dealt fentanyl and heroin out of," (2) "Shannon repeatedly entered and exited leading up to this arrest," and (3) Shannon walked out of "carrying a bag of narcotics right before he was arrested," which contained more than ninety-six grams of fentanyl. App'x at 1153–54. The district court further noted that, "[i]n addition to these seized narcotics, there was [Johnson's] extensive trial testimony about . . . Shannon's and his co[-]conspirators' drug dealings." App'x at 1154.

In sum, in calculating the base offense level, the district court carefully considered not only the trial evidence of the drug quantities involved in the overall conspiracy, but also Shannon's extensive involvement within that conspiracy, including his specific connection to the seized narcotics on the date of his arrest. Based upon that trial evidence, the district court did not clearly err in determining, by a preponderance of the evidence, that Shannon was responsible for at least four kilograms of fentanyl, as well as over 500 grams of heroin recovered from the Stash House, for purposes of his Guidelines calculation.

### B. Career Offender Designation

Shannon also argues that the district court erroneously classified him as a career offender

under U.S.S.G. § 4B1.2, because his prior drug convictions do not qualify as valid predicates under that provision. A defendant is a "career offender" if he was at least eighteen years old when he committed the instant offense of conviction, that instant offense is a felony and either a crime of violence or a controlled substance offense, and the defendant has at least two prior felony convictions for either crimes of violence or controlled substance offenses. U.S.S.G. § 4B1.1(a). The district court found that at least three of Shannon's prior felony convictions under New Jersey law were valid "controlled substance offense" predicates under the Guidelines for his career-offender designation: (1) an August 2009 conviction for a substantive heroin offense, in violation of N.J.S.A. 2C:35-5(b)(1); (2) a March 2010 conviction for conspiracy to manufacture, distribute, and possess with intent to distribute heroin, in violation of N.J.S.A. 2C:5-2; and (3) a November 2019 conviction for conspiracy to possess with intent to distribute controlled dangerous substances (including cocaine) in the third degree, in violation of N.J.S.A. 2C:5-2.

As a threshold matter, Shannon argues, as he did below, that, after the Supreme Court's decision in *Kisor v. Wilkie*, 588 U.S. 558 (2019), drug convictions for conspiracy, as opposed to a substantive offense, can never qualify as "controlled substance offenses" under Section 4B1.2(b), and thus neither his 2010 conspiracy conviction, nor his 2019 conspiracy conviction, provides the requisite second predicate. In particular, citing out-of-circuit case authority, Shannon contends that district courts may not rely on the Sentencing Commission's commentary to apply Section 4B1.2(b) to inchoate crimes, such as conspiracy. However, as Shannon concedes, we have rejected that argument in prior decisions. *See United States v. Tabb*, 949 F.3d 81, 88–89 (2d Cir. 2020) (holding that drug-conspiracy convictions can serve as predicates for career offender status under Section 4B1.2); *accord United States v. Richardson*, 958 F.3d 151, 154 (2d Cir. 2020). Those decisions, which post-date *Kisor*, are binding and foreclose Shannon's argument here. *See United States v.*

*Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004) (emphasizing that this Court is "bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court").

On appeal, Shannon raises two new challenges to his prior drug convictions under New Jersey law qualifying as career-offender predicates. First, he argues that none of his prior drug offenses qualifies because New Jersey criminalizes cocaine and heroin more broadly than federal law. Second, he contends that neither of his prior drug conspiracy convictions qualifies because New Jersey conspiracy law is broader than federal conspiracy law.

Whether an offense is a "controlled substance offense" under the Career Offender Guideline is a question of law that we decide *de novo*. *United States v. Savage*, 542 F.3d 959, 964 (2d Cir. 2008). However, because Shannon raises these challenges for the first time on appeal, we review for plain error. *See United States v. Gamez*, 577 F.3d 394, 397 (2d Cir. 2009) (per curiam). To demonstrate plain error, Shannon must show that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [his] substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (alteration adopted) (internal quotation marks and citation omitted). As set forth below, we discern no plain error in the designation by the district court of these New Jersey convictions as valid career-offender predicates.

We apply the categorical approach to determine whether a state law matches conduct involving a controlled substance as defined under federal law. *See Mathis v. United States*, 579 U.S. 500, 504 (2016); *see also Taylor v. United States*, 495 U.S. 575, 602 (1990). "'Under the categorical approach, courts identify the minimum criminal conduct necessary for conviction under

a particular statute' by 'looking only to the statutory definitions—i.e., the elements—of the offense, and not to the particular underlying facts.'" *Hylton v. Sessions*, 897 F.3d 57, 60 (2d Cir. 2018) (quoting *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018)). The categorical approach "is concerned with the existence of a valid prior conviction and the statute of conviction . . . [i.e., with] 'the fact that the defendant has been convicted of crimes falling within certain categories, and not to the facts underlying the prior conviction.'" *United States v. Thompson*, 961 F.3d 545, 550 (2d Cir. 2020) (quoting *Taylor*, 495 U.S. at 600).

A "controlled substance offense" includes:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b)(1). We have held that "a 'controlled substance' under § 4B1.2(b) must refer exclusively to those drugs listed under federal law—that is, the [Controlled Substances Act]." *United States v. Townsend*, 897 F.3d 66, 71 (2d Cir. 2018). As a result, "[a] state conviction will qualify as a predicate offense under [the Guidelines] if the state conviction aligns with, or is a 'categorical match' with, federal law's definition of a controlled substance." *Id.* at 72. "If a state statute is broader than its federal counterpart—that is, if the state statute criminalizes some conduct that is not criminalized under the analogous federal law—the state conviction cannot support an increase in the base offense level." *Id.*

Although Shannon suggests that New Jersey criminalizes heroin and cocaine more broadly than federal law, he has failed to cite any binding authority to support his position. Moreover, substantial authority weighs against Shannon's argument. *See United States v. Vega*, No. 18-3764, 2022 WL 1552993, at *2 (3d Cir. May 17, 2022) ("Without clear authority stating that New Jersey

13

criminalized potential isomers in 2001 [more broadly than federal law], [the defendant] cannot prove plain error."); *United States v. Powell*, 774 F. App'x 728, 732 (3d Cir. 2019) ("Because both New Jersey and federal law specifically list heroin, the drug possessed by [the defendant] in each offense, as a controlled substance, [the defendant's] prior convictions constitute predicate offenses and the District Court properly sentenced [the defendant] as a career offender."); *United States v. Holland*, No. 3:01 Cr. 195, 2022 WL 4096874, at *10 (M.D. Pa. Sept. 7, 2022) ("[T]he Court finds that the New Jersey statute does not sweep more broadly than the federal statute."). In short, given the lack of clear case authority supporting Shannon's position, we conclude that the district court did not plainly err in treating cocaine and heroin offenses under New Jersey as career-offender predicates. *See United States v. Whab*, 355 F.3d 155, 158 (2d Cir. 2004) ("For an error to be plain, it must, at a minimum, be clear under current law. We typically will not find such error where the operative legal question is unsettled, including where there is no binding precedent from the Supreme Court or this Court." (internal quotation marks and citation omitted)); *see also United States v. Lucas*, No. 19-3937-cr, 2021 WL 3700944, at *5 (2d Cir. Aug. 20, 2021) (summary order) ("Given the unsettled nature of the questions relevant to Defendant's argument, we cannot conclude the district court plainly erred in concluding that Defendant's 2003 conviction was for a 'controlled substance offense,' notwithstanding the definition of cocaine in the federal and state drug schedules."); *United States v. Maslar*, 663 F. App'x 59, 61–62 (2d Cir. 2016) (summary order) (holding that district court's determination that defendant was a career offender was not plain error because, assuming there was error, it "was not clear or obvious, rather than subject to reasonable dispute" (internal quotation marks and citation omitted)).

We reach the same conclusion with respect to Shannon's contention that his conspiracy convictions under New Jersey law are broader than under federal conspiracy law, and therefore,

14

cannot constitute valid career-offender predicates. Shannon asserts that the New Jersey conspiracy statute has been interpreted to encompass agreements between a defendant and an undercover law enforcement officer or a confidential informant operating under the direction of law enforcement, a so-called "unilateral conspirac[y]," *State v. Conway*, 472 A.2d 588, 603 (N.J. Super. Ct. App. Div. 1984), in contrast to a federal narcotics conviction under Section 846, which we have held requires that the defendant "have conspired with someone other than a government agent or an informant," *Montgomery v. United States*, 853 F.2d 83, 85 (2d Cir. 1988). To support his position, Shannon relies upon two out-of-circuit cases, but cites no binding authority from the Supreme Court or this Court reaching such a conclusion. Indeed, we have held that drug conspiracies under New York law, which encompass unilateral drug conspiracies with undercover agents and confidential informants, can serve as a predicate offense for career-offender status under the Guidelines. *See United States v. Pearson*, 77 F.3d 675, 676–77 (2d Cir. 1996). Moreover, the Third Circuit has held that a drug conspiracy under N.J. Rev. Stat. § 2C:5-2, which is the same statute that was the basis for Shannon's convictions, is a valid career offender predicate. *See United States v. Perez*, 79 F. App'x 519, 521 (3d Cir. 2003). Although there is no indication that this particular argument was raised in either of those cases, given the unsettled nature of the law on this issue, the district court did not plainly err in finding that the two New Jersey conspiracy convictions qualified as valid career-offender predicates. *See United States v. Pemberton*, 85 F.4th 862, 867–68 (7th Cir. 2023) (per curiam) (holding that district court did not commit plain error in finding that a conviction under an Indiana conspiracy statute, which covered "unilateral conspiracies," was a valid career-offender predicate); *see also United States v. Maloid*, 71 F.4th 795, 816 (10th Cir. 2023) (same with respect

15

to a Colorado statute).[2]

Finally, even if either of those purported errors was obvious, Shannon's unpreserved arguments would still fail the plain error test, because in light of the large quantity of drugs involved, and the fact that Shannon's extensive criminal record places him in a criminal history category of VI (the highest provided under the Guidelines), the effect of the career offender designation was minimal, raising his offense level by only one point and leaving his criminal history category unchanged. The net effect of the designation is thus to raise the bottom of the recommended sentencing range for Count One only from 324 months' to 360 months' imprisonment. Given that the actual sentence imposed on that charge was only 200 months and that the district court appears to have placed little weight on the Guideline recommendation in determining the appropriate sentence, we cannot conclude that any error affected the defendant's substantial rights, as required at the third step of the plain error standard.

\*                    \*                    \*

---

[2] Shannon argues, in the alternative, that his counsel's failure to challenge the career-offender designation at sentencing on the grounds now being raised for the first time on appeal constitutes ineffective assistance of counsel. Where, as here, a defendant asserts an ineffective-assistance-of-counsel claim on direct appeal through new counsel, we have three options: "(1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent [28 U.S.C.] § 2255 petition; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before us." *United States v. Leone*, 215 F.3d 253, 256 (2d Cir. 2000). With respect to exercising our discretion among those options, we have emphasized that "[o]ur general approach is to decline to review ineffective assistance claims on direct review without prejudice to a defendant later raising them collaterally under 28 U.S.C. § 2255" because that approach "permits district courts to develop a factual record and to hear from the allegedly ineffective attorney." *United States v. Bodnar*, 37 F.4th 833, 844–45 (2d Cir. 2022). We discern no basis in this appeal for departing from our general approach. Thus, we decline to address this claim on direct review and conclude that Shannon may raise it in a Section 2255 petition.

We have considered Shannon's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the December 19, 2022 judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court